Johnson *v.* Hicks.

---

CYNTHIA A. JOHNSON with JOHN JOHNSON, her husband, and WILLIAM M. BOWEN, Appellants, v. ABNER HICKS and others, Respondents.

(GENERAL TERM, EIGHTH DISTRICT, SEPTEMBER, 1869.)

The joining of law and equity jurisdiction, in the same court, has not changed the practice, nor effected a repeal of any of the provisions of the statute, regulating the course of proceedings on appeals from surrogates' decrees, admitting or refusing probate of wills.

In such cases, when an appeal might formerly have been taken from the decision of the circuit judge to the Court of Chancery. (2 R. S., 609, § 100), the review on appeal is still in the nature of a rehearing in equity.

But when the surrogate's decision is reversed upon a question of fact, the Supreme Court, on reversal, should direct an issue to be made up, to try the questions arising upon the application to prove such will, and direct the same to be tried at the circuit. (2 R. S., 66, § 57; 609 § 98.) And until the final determination of such issue, the case proceeds as an action at law, and is to be so considered on a motion for a new trial.

The award of such an issue to be tried by a jury, is a matter of right. And the Supreme Court in reversing, on the facts, a surrogate's decree admitting or refusing probate of a will, cannot, at its discretion, direct the surrogate to enter a final decree in accordance with the terms of the order of reversal.

The case of *Pilling* v. *Pilling* (45 Barb., 86), reviewed and disapproved, so far as it conflicts with the foregoing.

On the trial of an issue to determine whether an alleged testator's signature is genuine or simulated, it seems that his declaration made before the date of the alleged will, that he intended to give his property to the legatees therein named; and his declaration made after that date, that he had made such will, are inadmissible as evidence to sustain the genuineness of the signature.

The rule excluding the opinion of experts, whether a signature is genuine or simulated, formed by comparing it with other writings, not in evidence in the cause or admitted to be genuine, stated and applied in this case.

An instrument purporting to be the last will and testament of Mason Hicks, deceased, was presented by the appellants, the devisees, and legatees, therein named, to the acting surrogate of Niagara county for probate. The same was contested by the respondents, the heirs-at-law and next of kin of the deceased.

The surrogate refused to admit the will to probate, on the grounds that the deceased never executed it; that his signature had been forged; and that the signature of A. T. Richardson, one of the witnesses, had also been forged. Richardson was dead at the time the will was offered. Philip Young, the other witness, was produced and examined on the hearing. Evidence was given tending to prove that the testator's signature was genuine, and that the will had been executed in the manner and form required by the statute. And the contestants gave evidence tending to prove that the signatures of the testator and Richardson were both forgeries.

On appeal to the Supreme Court, the decree of the surrogate was reversed on a question of fact, and issues were settled to be tried at a Circuit Court in Niagara county, involving the questions.

1st. Did Mason Hicks in his lifetime subscribe his name to said instrument?

2d. Did he in the presence of Philip Young and A. T Richardson, subscribe the same?

3d. Did each of the attesting witnesses sign his name as a witness at the end of said instrument at the request of said Mason Hicks?

The issues were tried at a Circuit Court in Niagara county on the 6th day of December, 1868, and the jury answered each of the questions in the negative.

Upon the trial the appellant took several exceptions to rulings of the court in receiving evidence offered by the respondents, and rejecting evidence offered by the appellants, and also upon a refusal to charge the jury as requested.

A case containing exceptions and purporting to contain all the testimony given on the trial was prepared, and an order entered that the case and exceptions be heard at a General Term in the first instance.

The appellants brought on the hearing and moved for a new trial, as on a bill of exceptions.

*S. F. Brown & Farrell,* for the appellants.

*Hiram Gardner & S. E. Church,* for the respondents.

Present—MARVIN, LAMONT and BARKER, JJ.

By the Court.—BARKER, J. Before investigating the several exceptions contained in the case, an important question is to be considered and determined, as to the nature and character of the proceedings before the court, and the rules and practice, that are to guide and govern in the disposition of the same.

On the part of the appellant, it is insisted, that the questions presented by the exceptions to the rulings of the court on the trial, shall be regarded the same as if they arose in an action at law.

On the part of the respondents it is claimed, that the proceedings are now before the court, in the nature of a rehearing in equity, and that the court is as free from the strict and

technical rules of the common law, as if it was a motion for a new trial in an equity action, where feigned issues have been awarded and trial had thereon by a jury; that error in receiving evidence is not ground for granting a new trial, if the facts, established by competent testimony, are sufficient to uphold the verdict; nor will the rejection of evidence furnish ground for reversal, provided the court can see that such rejected evidence should not change the result; and that, this court has the power to disregard the finding of the jury, and to order the will to be admitted to probate, if it is satisfied, upon a perusal of the evidence, that the verdict of the jury is erroneous, and the facts proved establish the validity of the will.

In equity actions, where issues of fact have been awarded and tried by a jury, so long as the verdict of the jury stands, the court is bound by the same, and must follow the findings, upon the final hearing, or in any subsequent proceeding therein. If either party to the suit desires to review the proceedings on the trial, he must prepare a case, and exceptions, and bring them to a hearing and decision before the action is heard on the equities reserved. On such review and motion, for a new trial, the equity court may grant or refuse a new trial within its discretion. It may disregard errors that would certainly lead to a new trial, in a common law action, and it may order a new trial without pointing out any error. (*Forrest* v. *Forrest*, 25 N. Y., 511; *Lansing* v *Russell*, 2 Coms., 563.) Prior to the adoption of the 33d rule, it was within the power of the judge, and frequently exercised, on the final hearing, to disregard the finding of the jury, and, on the minutes of the trial, certified to him by the circuit judge, to arrive at a different and adverse result from that of the jury, and make such conclusions the basis of the decree. This power in the equity judge, led to much just complaint, and often to great injustice. Suitors, relying upon the verdict of the jury, sought a final decree based thereon, and guided thereby. For the first time, they were informed, that the conscience of the court, was

not satisfied with the verdict of the jury, and that the judge, himself, would determine the facts, consider, and balance conflicting evidence, and contradictory circumstances. The practice, as fixed by the standing rules of the court, is in conformity with the practice in the English Equity Courts, and will be steadily adhered to by this court. (1 Barb. Ch. Pr., 446.)

The jurisdiction of this court over the proceedings is acquired by the special provisions of the statute, and it gives to the proceedings after feigned issues are awarded, the character of an action at law, rather than that of a proceeding in equity. The joining of law and equity jurisdiction in the same court, has not changed the practice, nor effected a repeal of any of the provisions of the statute, regulating the course of proceedings on appeal from the decree of a surrogate admitting or refusing probate to a will.

The Revised Statutes provided for an appeal from the determination of the surrogate to the circuit judge, who heard the appeal upon the return of the surrogate, which contained all the evidence taken before him, his rulings on the hearing and the final decree. (2 R. S., pages 66, 67, § 55, marginal pages.)

If it appeared to the circuit judge that the decision of the surrogate was erroneous, he, by an order, reversed such decision ; and if such reversal was founded on a question of fact, the order further directed that a feigned issue be made up *to try the questions arising upon the application to prove the will,* and directed the same to be tried at a Circuit Court. The same were to be made up and tried in the same manner as issues awarded by the Court of Chancery. "But a new trial of such issue may be granted by the Supreme Court in the same manner as if it had been formed in a suit originally commenced in such court." The final determination of such issue, in respect to wills of personal property, is conclusive as to the facts therein controverted, and the surrogate is required *to follow such determination.* (§ 58, 59, id.)

If the circuit judge affirmed the decree or reversed the

Johnson v. Hicks.

same on questions of law only, then an appeal could be taken to the chancellor. (2 R. S., p. 609, § 100.)

To my mind it is obvious that it is intended by these provisions of the statute, to treat the bill of exceptions the same as if made in an action at law. It will be observed that in a case like this, where the circuit judge and the surrogate disagreed on a question of fact, the proceedings never came before the chancellor, on appeal or otherwise; they remained in the Supreme Court, there to be regarded as an action at law. Another reason is apparent why we should regard the proceedings as on the law side of the court, and apply the rules applicable thereto, in granting or refusing a new trial; the statute makes the verdict final and conclusive on the facts controverted. To hold that the rejection of evidence that is pertinent and material to the issue, and that should be weighed and considered by the jury, when offered by the party that has lost the verdict and is defeated in the litigation, is not error, is disregarding the rules of the common law, and places the rights of suitors in the arbitrary hands of the judge presiding at the circuit. In equity cases, where feigned issues are awarded, the application for a new trial is made before the equity judge, where the more technical rules of the common law do not prevail. Here, by a special provision, the application for a new trial is required to be made in the Supreme Court, a tribunal that proceeds according to the course of the common law.

It is suggested that since the Supreme Court has law and equity jurisdiction combined, the above quoted provisions of the statute are not applicable, and that the issue of fact awarded by the statute, and which is directed to be tried by the jury, is no longer a matter of right to suitors, but that the Supreme Court on appeal from the surrogate's decree can reverse the same on the facts, and direct the surrogate to enter a final decree, admitting the will to probate, or rejecting it, in accordance with the determination of the Supreme Court. And that the Supreme Court may or may not, entirely within its discretion, award feigned

issues; and to this effect is the case of *Pilling* v. *Pilling*, (45 Barb., 86), where on appeal from an order of the surrogate refusing probate of a will, the Supreme Court reversed the order on a question of fact, and directed the surrogate to admit the will to probate. This is plainly disregarding the provision of the statute, which has not been repealed, and can only be sanctioned upon the idea, that the reorganization of the courts, since the statute, makes the statute inapplicable. By the provisions of the 17th section of the judiciary act of 1847, the appeal is to the Supreme Court, instead of the circuit judge; and where, prior thereto, the appeals were to the chancellor, they are now to the Supreme Court. The ruling in *Pilling* v. *Pilling* (*supra*) is contrary to the decisions and uniform practice of this district, and we think is not supported by the cases cited. The provisions of the judiciary act give this court jurisdiction in this class of cases. The provisions of the Revised Statutes remain in force and guide the mode of proceeding.

The learned court, in considering the case of *Pilling* v. *Pilling*, did not consider how, under the provisions of the Revised Statutes, a court of law got jurisdiction of one class of appeals and the Court of Chancery of another.

When the circuit judge and the surrogate disagreed on the facts, these feigned issues were awarded. When the circuit judge and the surrogate agreed on the facts and the law, or disagreed only on the law, from his order an appeal was taken to the chancellor; but in no case, relating to the probate of a will, could an appeal be taken direct to the chancellor. In cases where the chancellor got jurisdiction of the appeal, he could reverse the surrogate and direct the terms of the decree, either admitting or rejecting probate of the will.

I see no difficulty in observing and following all of the provisions of the statute now. If the Supreme Court concur with the surrogate on the facts, and affirm his decree, and an appeal be taken to the Court of Appeals, and that court disagrees with both the Supreme Court and the surrogate on the facts, that court can direct the terms of the decree to be

Johnson *v.* Hicks.

entered, as it did in *Coffin* v. *Coffin* (23 N. Y. 9), cited by the court in *Pilling* v. *Pilling*. In all the other cases cited by the learned judge, who writes the opinion in that case, it appears that there was an affirmance of the surrogate's order by the circuit judge in the cases before him, and by the Supreme Court in cases arising since 1847.

Unless the statute requires the making up of feigned issues in cases where the court and surrogate disagree upon the facts, then, in my opinion, the proceedings before us on this hearing are unauthorized; for the court has no authority to authorize them by virtue of its general powers and jurisdiction. The appellate court must hear and determine upon the record certified to it, and has no power to make new issues and receive new evidence. Such were the views of the Court of Appeals in *Devin* v. *Patchin* (26 N. Y., 441).

The case of *Clapp* v. *Fullerton* (34 N. Y., page 195), cited by the counsel for the respondents, is not in conflict with these views. The Supreme Court had affirmed the decree of the surrogate. The surrogate had, upon the hearing before him, admitted incompetent evidence, in permitting witnesses to express their judgment as to the testator's mental capacity. This error was disregarded by the Supreme Court and by the Court of Appeals as not fatal, it being apparent, upon the whole case, irrespective of the evidence improperly admitted, that the testator was clearly competent, and that the will was properly admitted to probate; and it is also remarked by the court: " On appeals from the decrees of surrogates, the Supreme Court succeeds to the jurisdiction and authority of the old Court of Chancery. The review is in the nature of a rehearing in equity, and the admission of improper evidence on the original hearing furnishes no ground for reversal, if the facts established by legal and competent testimony are plainly sufficient to uphold it." It is very plain that the question before us arises under very different circumstances. Suppose the Court of Appeals, in the case above quoted from, had arrived at the conclusion, that the will should have been denied probate, it possessed the power to order such a decree

to be entered by the surrogate, or it might simply reverse the decree and order the surrogate to proceed *de novo*. (*Schenck* v. *Dart*, 22 N. Y., 420.) In the case at bar, suppose we deny a new trial, and an appeal is taken to the Court of Appeals, and that court is of the opinion, that the verdict of the jury is without sufficient evidence to support it, and the evidence established the due and legal execution of the will. Can it order the will to be admitted to probate? Clearly not; it can only order a new trial, for the reason that it is now before the courts in the nature of an action at law, and this will can never, by any proceeding known in our courts, receive probate, unless the verdict of the jury declares in favor of its due and legal execution. Upon the trial, the appellants offered to prove the declarations of Mason Hicks before the time of making the alleged will, that he intended to give his property to the legatees therein named, and that after the date of the will, he declared that he had made such a will, and stated who the witnesses were, and that the will was in the upper town of Lockport. This evidence was objected to and excluded by the court, and the appellants excepted. This is clearly and admittedly hearsay testimony, and was properly rejected unless it falls within some of the exceptions to the general rule of law, that excludes such evidence. Both parties claim under the decree, and by representation, and they take his estate subject to all claims, demands and incumbrances thereon. As between ancestor and heir, devisor and devisee, testator and legatee, donor and donee, the declarations of the former, made in regard to his estate, against his interest, and in limitation or qualification of the same, are evidence against the latter, on the ground that they are privies in estate and identified in interest, and by this rule, it is to be determined whether the evidence should have been received or not. (1 Greenleaf, §§ 189–190.) It was not against his interest to make the declaration, and it certainly in nowise affected his estate favorably or unfavorably. It remained the same, whether he had made the will or not. If he had executed the will

when he made the alleged declaration, it vested no estate in the devisees and legatees named therein, and was subject to his revocation.

In the cases cited and relied upon by the counsel for the appellants, it will appear that the rulings are based upon this principle: (*Waring* v. *Warren*, 1 John, 340; *Paige* v. *Cagwin*, 7 Hill, 361; *Smith* v. *Webb*, 1 Barb., 231; *Booth* v. *Swezey*, 4 Selden, 276; *Brown* v. *Mailler*, 2 Kern., 118; *Keator* v. *Dimmick*, 46 Barb., 158; *Hunter* v. *Hunter*, 19 Barb., 634.)

In *Waterman* v. *Whitney* (11 N. Y., 161), it was held that the declarations of the testator, before or after the execution ot the will, cannot be given in evidence to impeach the same, unless it be to show the mental incapacity of the testator, and they will be rejected for the purpose of proving fraud, duress, imposition, or other like cause. If the respondents would be prohibited from proving the declarations of the testator, that he never had made a will, I do not see how the appellants can prove his declarations, that he had.

The statute of this State requires wills to be executed with great solemnity and formality, and in full compliance with its provisions, and the declarations of the testator cannot be given to uphold or destroy their validity unless made at the time of tne execution, so as to become part of the *res gestœ*. (*Jackson* v. *Betts*, 6 Cow., 377.) We are, therefore, of the opinion that the offer was properly excluded.

Isaac B. Luce was called as a witness for the respondents, and testified that he had seen Mason Hicks write many times, and had been Hicks' tenant. Papers were shown the witness, and he said they were the leases he received from Hicks, and that he saw him sign the endorsement. He then testified, that he did not think it was Hicks' signature to the will.

Afterward Albert J. Kendall was called as a witness by the contestants, and it appeared from his examination, that he had great experience in scrutinizing signatures, and detecting forgeries, and was well entitled to be called an

expert in such matters.   He was then shown the Hicks will, and asked the following question: What is your opinion, as to whether the signature of "Mason Hicks" is a simulated signature?   The appellant's counsel objected, and the court received the answer, which is: It is my opinion, that "Mason Hicks," is a simulated signature.   The signature of Mason Hicks to the lease, and the endorsement thereon, proved by the witness, Isaac B. Luce, were shown this witness, and the following question asked: Do you discover, in any of these signatures any of the painting, or retouching, which appears in the signature of Mason Hicks to the will?   Under an objection by the appellants, that the inquiry was incompᵥ tent and immaterial, the question was allowed, and the witness answered: "I see no marks of retouching on any of these signatures or endorsements."   The witness had previously, in his evidence, fully described to the jury the appearance of Mason Hicks' signature to the will, giving the formation of the letters, the indications existing, that the words had been retouched or painted; that the lines of the letters were broken, and fully and minutely describing the formation and peculiarities of the letters in the signature. The witness had never seen Mason Hicks write, and was not familiar with his signature by other means.

The latter question called for the opinion of the witness, whether the signature of Hicks to the will was genuine or not, by comparison with the signatures attached to the papers exhibited to the witness, Luce.   In this State, the opinions of experts are not received to prove the genuineness of the signature in controversy by comparison of hands, unless the signature produced is attached to papers in evidence, and material to the issue, or admitted to be genuine. (1 Greenleaf, § § 576, 577, 578; *Jackson* v. *Phillips*, 9 Cow., 94; *Wilson* v. *Kirkland*, 5 Hill, 182; *People* v. *Spooner*, 1 Denio, 343; *Dubois* v. *Baker*, 30 N. Y. R., 355.) The leases were not offered in evidence by the respondents, who produced them to the witness, Luce, and no opportunity afforded the appellants to object to the same; and, if offered

Johnson *v.* Hicks.

in evidence, "it is not sure that they would have been pertinent.

The question, in effect, asked for the opinion of the witness. It was placing the signature in controversy in juxtaposition with the one assumed to be given, and not yet exhibited to the jury, and asking the witness if there was a difference in them, and, in addition, suggesting the dissimilarity. The witness answers that there is a difference, that he sees no marks of retouching in any of the signatures or endorsements. Is this anything but an effort to disprove the signature to the will, by a comparison of handwriting? To my mind, it is too plain to need argument or illustration.

The counsel for the respondents cites 30 N. Y., page 355, *Dubois* v. *Baker*, as an authority for permitting this evidence. There it was admitted that the signature to the note in controversy was genuine, and the claim set up that the body of the note was fraudulently written over the same by the defendant, the holder, and it was admitted that the same was in his handwriting. The witness, a cashier of a bank, and familiar with holder's handwriting, produced five papers, the checks and receipts of the defendant, and he was asked to state in what respect the character of the handwriting of the note in dispute differed from the receipts and notes shown him, for the purpose of showing that the body of the note was not written in the defendant's usual style, but was cramped and unnatural. DAVIES, J., who wrote one of the two opinions published, held that the evidence was competent, and it is apparent that he regarded the papers produced, *as in evidence and material.* MULLIN, J., whose opinion is also published, regarded the papers as in evidence, but held the evidence was improper, on the ground that the witness was not called upon to speak from his own knowlege of the party's handwriting, but from a comparison with other writings. The facts in the case before us do not bring the question within the rule laid down by Judge DAVIES, if we take that to be the proper one.

It is manifest that the answer to the first quest on,

propounded to the expert, was improperly received. The inquiry clearly and directly called for his opinion on the question in issue. The witness understood the question to call for his opinion, and he gave his answer accordingly: " It is my opinion that ' Mason Hicks' is a simulated signature," the word " simulated" being used in both the question and answer, in the same sense as forged or counterfeited. Tl e fact that this witness afterward gave his reasons for his opinion does not relieve the evidence from the force and ground of the objection. The true basis of the objection is, that the witness had never seen the testator write, nor in any proper manner become familiar with his signature. Until he had this essential knowlege he was not competent to offer an opinion. The evidence of this witness, in describing the appearance of the signature to the will, was competent and undoubtedly very beneficial to the jury, in drawing their attention, in detail, to the appearance of the signature, so as to enable them to judge, whether, as a question of fact, it was different from the testator's genuine signature. The party assailing the will as a forged instrument, had a right to have a full and minute description of the signature incorporated in the record, so that the court of review may be informed as fully as possible of the appearance of the signature. Any intelligent business man is a competent witness for this purpose. However intelligent and experienced, he is incompetent to give an opinion as to the genuineness of the signature, unless he be acquainted with the handwriting of the deceased.

The other authorities cited by the respondent, are decisions made in other States, where it is well understood a different rule prevails. Considering the nature of the issue, upon which this evidence was given, and the character of the evidence, that each party produced to support the same, we must regard this incompetent proof, as likely to have had weight with the jury, in determining the issue against the appellants.

In my opinion, it was technical error to permit the witness,

Parmelia Burdage, to testify that, in her opinion, on the day the wiᴸ. bears date, Richardson was unable to go up stairs to the room where the will was executed. If it were the only error in the case, the court would likely hold that it could not have had any controlling weight with the jury and disregard the same.

There must be a new trial granted on the feigned issues.

New trial granted.