IN THE MATTER OF THE PROBATE OF THE LAST WILL AND TESTAMENT OF TIMOTHY CLARK, DECEASED.

*Probate of a will — a motion for a new trial, after a verdict of a jury upon a trial ordered by the General Term, must be made at Special Term — Code of Civil Procedure, secs. 2548, 2588 — a husband is not interested in the event of an action affecting his wife's title to real estate — Code of Civil Procedure, sec. 829 — declarations of a testator — when admissible to show his mental condition.*

Where a decree of a surrogate admitting a will to probate has been reversed by the General Term, and the question as to whether the execution of the will has been procured by undue influence has been directed to be tried by a jury, which has answered the question in the affirmative, a motion for a new trial should, since the adoption of the Code of Civil Procedure, be made at Special Term and not, as formerly, at General Term.

The facts of this case were held to be sufficient to justify a verdict finding that the execution of the will was the result of undue influence.

The contestants called the husbands of two of the daughters of the testator who took nothing under the will, and these husbands gave evidence of conversations had by them with the testator, to which objections and exceptions were taken upon the ground that the witnesses were interested in the event and that their testimony was inadmissible under section 829 of the Code of Civil Procedure, for the reason that they might take, as tenants by the curtesy on surviving their wives a life estate in the real property which the wives might inherit.

*Held*, that the husbands had no interest in the event of the action, in the legal sense of that term.

The will was made on September 5, 1882, and the testator died on the nineteenth of the following November at the age of fifty-nine years. The testator, although of sound and disposing mind and memory, was, at and from the time the will was made until his death, in feeble health. Upon the trial the contestants were allowed, against the objection and exception of the proponents, to prove declarations of the testator, made in November after the execution of the will, relating to the will he had made, and to one which had been prepared in accordance with his instructions, but which he did not execute, and as to which he said that his wife objected and he had to make another.

*Held*, that the declarations were admissible as bearing upon the mental vigor and condition of the testator at the time of the testamentary act.

APPEAL from an order of the Erie Special Term, denying a motion for a new trial of issues tried at the Genesee Circuit.

The will of Timothy Clark, deceased, was admitted to probate and record by the surrogate of Genesee county. And on an appeal taken by the contestants to the General Term of this court, the decree of the surrogate was reversed, and a trial by jury directed of the question, " Was the execution of the will procured by undue influence ? " The trial was had and the jury, by their verdict, answered in the affirmative. The proponents' motion for a new trial was denied, and they appealed.

*L. N. Bangs*, for the proponents, appellants.

*George Bowen*, for the contestants, respondents.

BRADLEY, J.:

The practice of the proponents in making their motion for a new trial at the Special Term, instead of the General Term, was correct, although it was otherwise before the provisions of the Code of Civil Procedure, became applicable to proceedings in and arising out of Surrogates' Courts. Before then the only statute providing for the trial of such issues by jury, on reversal of a surrogate's decree

in will cases, and for granting new trials, was given by 2 Revised Statutes (67, § 58), by which the power was in the Supreme Court to grant a new trial of such issue " in the same manner as if it had been formed in a suit originally commenced in such court." At the time of the adoption of the Revised Statutes the Supreme Court consisted of a chief justice and two justices (Const. 1821, art. 5, § 4), and its powers and jurisdiction are mentioned and its terms designated by 2 Revised Statutes (196, 197, §§ 1, 3). Special Terms were first provided for and to hear non-enumerated business by Laws 1830 (chap. 185, § 1); and Special Terms in counties for specified purposes not embracing motions for new trials by Laws. of 1847 (chap. 280, § 20). Thereafter appeals from surrogates' decrees were taken to the General Term. (Id., § 17; *Whitbeck* v. *Patterson*, 22 Barb., 85.) It would seem that a motion for a new trial, pursuant to the Revised Statutes, which might be granted by the Supreme Court, was necessarily made at General Term. (*Marvin* v. *Marvin*, 3 Abb. Ct. App. Dec., 193; S. C., 4 Keyes, 10; *Sutton* v. *Ray*, 72 N. Y., 484, 485; *Johnson* v. *Hicks*, 1 Lans., 150.) But the present statute, which was made applicable to proceedings of this character, commenced on or after the first day of September, 1880 (Code Civ. Pro., § 3347, sub. 11), provides that a new trial may be granted by the Supreme Court (Id., §§ 2548, 2588), which is represented and acts for such purposes by Special as well as General Terms, and except as otherwise provided, the former is the proper place to make original motions for new trials in this court. This embraces the motion in question, which was properly heard at Special Term.

The evidence, while it by no means is conclusive, was sufficient to go to the jury on the question whether the will was produced by undue influence. The will was made September 5, 1882, and the testator died on the nineteenth of the following November, at the age of fifty-nine years. He had a wife, three married daughters and two sons, one of whom was married. The younger one, Frank, was unmarried. By his will he gave substantially the use of his real estate to his wife; a legacy of $500 to a grandson if and when he should arrive at the age of twenty-one years, and the residue of his real estate to his two sons, Michael and Frank. His property was mostly realty and valued at from $7,000 to $8,000. On the

day the will was made the testator was in his bed and quite ill; by his consent or direction a lawyer was sent for and came to draw his will, and after an interview with him prepared one as the testator had directed. His wife then entered the room and the will was read to her by her request, followed by direction of the husband to do so, and after hearing it she said that was no way to make a will, and complained because no provision was made for the son Frank, and said that she "would allow no one to enter the house to witness such a will as that * * * that if he executed that will she would curse him and dance on his grave, and that she would get a lawyer and law all the property away * * * that he was out of his head * * * and had been so for six months and she could prove it." This draft of his will made no provision for the son Frank, and he was purposely so left out, for reasons which were given by the testator. It does not clearly appear what the other provisions of it were. The draughtsman says that it contained $500 to the grandson, and he thought a little was provided for the daughters, and that at this interview the wife said the daughters had had enough, and that the grandson (son of one of them) ought not to have anything; that the testator yielded so far as to direct the will drawn as finally made, with which the wife was satisfied, and the evidence tends to prove that the testator expressed approval of the change. This evidence, relating to what was said on the occasion, to some extent was contradicted by that of the widow. And the jury were permitted, upon the evidence, to find that the will was not the result of any undue influence, but came from the more deliberate consideration of the testator, had after the suggestions made by his wife, and that it had the approval of his judgment. The subject of the testamentary disposition of his property was properly one for consultation between the testator and his wife, and upon which she, with no legal impropriety, could advise, and in a reasonable manner endeavor, by the exercise of influence, to move and satisfy his judgment, the accomplishment of which does not come within the meaning of undue influence. That to which the law gives effect to defeat testamentary action and deny probate to a will, is the result of influence amounting to coercion, or such as deprives the testator of the free exercise of his will, and not the influence springing from family relation or from considerations of service, affection or

gratitude. (*Gardiner* v. *Gardiner*, 34 N. Y., 155; *Hazard* v. *Hefford*, 2 Hun, 445.)

In view of the feeble health of the testator, which may to some extent have impaired the vigor of his mental faculties, we think the evidence presented a question of fact for the jury upon the issue presented, and was sufficient to support their verdict.

The contestants called two of the husbands of the daughters of the testator, who gave evidence of conversations had by them with him, to which objections and exceptions were taken, upon the ground that the witnesses were interested in the event, and their testimony within inhibition of the Code (Code Civ. Pro., § 829), for the reason that they might take, as tenants by the curtesy on surviving their wives, a life estate in the real property of which they should die seized. The test of interest of a witness is that he will either gain or lose by the operation of the judgment, and it must be present and certain, not uncertain, remote or contingent. (1 Greenl. Ev., § 390; *Hobart* v. *Hobart*, 62 N. Y., 80–83.) They had no interest in the event of the controversy in a legal sense. Their right to take, as survivors of the wives, a life estate in the lands of which the latter should be seized during coverture (assuming that other requisites exist), is dependent upon their omission to dispose of them by devise or otherwise. This power of disposition makes such right contingent, and as much so as that of one who may be the heir and take, by descent, lands which his ancestor may leave undisposed of at his death. Such fact furnishes no interest to the heir apparent in the event of an action in the lifetime of the latter, respecting his title to lands, because it cannot be said that he has any certain and vested interest. (1 Greenl. Ev., § 390.) Tenancy by the curtesy initiate ceased to be a certain interest in lands thereafter acquired when the statutes permitted the wife to dispose of her estate in them. (Laws of 1848, chap. 200, and 1849, chap. 375.) The rule is otherwise in respect to the inchoate right of dower of the wife of which she cannot be divested by her husband, and her interest is deemed certain as well as vested, and this was the reason which was applied for the exclusion of her testimony in *Steele* v. *Ward* (30 Hun, 555).

The proponents also took exception to the admission of declarations made by the testator in November following the time

of making the will. These declarations had relation to the
terms of the will he had made, and the one he first undertook
to make, and in respect to this added, that his wife objected
to it and he had to make another. This evidence was clearly
incompetent to prove the contents of the will in question or
those of that he first had the purpose to make or to show that
the one made was caused or produced by duress. The validity of
the will cannot be affected or impeached by his declarations. They
were no part of the *res gestæ* and, therefore, were not any or com-
petent evidence of the facts stated by them. (*Waterman* v.
*Whitney*, 11 N. Y., 157; *Marx* v. *McGlynn*, 88 id., 357; *Sanford*
v. *Ellithorp*, 95 id., 48.)

But the question on trial was whether the will was the result of
undue influence which involved the consideration of the mental
condition of the testator at the time he made it. Although he was
then of sound disposing mind and memory, his susceptibility to the
influence and control of others depended somewhat upon the vigor
and character of his mind and will power. He was in feeble health
at and from the time the will was made until his death, notwith-
standing he improved in that respect and was out some in the
meantime. His declarations were only competent as bearing upon
the state and condition of his mind at the time of the testamentary
act. The declarations were made about two months afterwards, and
were not separated from the act by such length of time, nor were there
such intermediate changes of condition as to enable the court to
hold, as matter of law, that it was not competent to prove them,
with a view to the inquiry as to his mental vigor and condition at
the time the will was executed, as bearing on the question of undue
influence. This was so treated when the case was before the General
Term, on review of the surrogate's decree, and we think that view
was correct. (*Waterman* v. *Whitney*, 11 N. Y., 157; *Cudney* v.
*Cudney*, 68 id., 148; *Marx* v. *McGlynn*, *supra*.) It was for the
court, in its instruction to the jury, to guide them in the considera-
tion of this evidence so as to give them an understanding of the
limited purpose for which it could, and could not, be considered or
applied, and as the charge is not contained in the record it may be
assumed that it was in this respect, as well as in others, satisfactory
to the proponents.

The evidence of one of the daughters as to what she did with her earnings before marriage was received solely to contradict the statements of her mother in that respect, and an exception was taken. The order in which the evidence appears in the record places the testimony of the mother later in the trial than that of the witness, and assuming that such was the order in which it was given, it is not treated as error prejudicial to the proponents, as it does go in contradiction of that given by the mother as relates to the use by the witness of her earnings. We see no occasion upon the evidence to disturb the verdict of the jury, and none of the exceptions seem to have been well taken.

The order should be affirmed.

SMITH, P. J., and BARKER, J., concurred; HAIGHT, J., not voting.

Order affirmed, with costs to the respondent, payable out of the estate.