ROBERTS, Ex'r, *vs.* TRAWICK et als.

1. In a proceeding to try the validity of a will, which gives to the widow of the deceased a larger portion of the estate than she would be entitled to under the statute of distribution, her heirs, she being dead, are competent witnesses to defeat but not to sustain the will.

2. The declarations of a testator, made two or three weeks before the execution of the will, are admissible evidence to prove fraud or undue influence in its procurement.

3. Where the validity of a will is impeached for fraud or undue influence, the declarations of the testator, made at the distance of ten, and repeated five years anterior to its execution, tending to show a fixed and settled purpose to make a will similar to the one in controversy, are admissible in evidence to rebut the idea that it was procured fraudulently, or by the over-persuasion of others.

Error to the Orphans' Court of Tuscaloosa.

This was a proceeding to try the validity of a will, purporting to be that of Nathaniel Davis, deceased, which the plaintiff in error as his executor offered for probate, and which was contested by several of the heirs of the deceased. The will gives Elizabeth Davis, the widow of the deceased, and who has since died, all the ready money of the deceased, which was found to be in amount $1312, and personal property and effects of the estimated value of $1182—in all $2494. The entire estate, exclusive of lands, worth $1600, was valued at about $9,800. The grounds of the contest were the unsoundness of mind of the deceased, undue influence exercised by the said Elibabeth, and fraud practised upon him by her and the alleged executor. On the trial several exceptions were taken by the executor to the ruling of the court, all of which, with the explanations necessary for a full understanding of them, are sufficiently set forth in the opinion of the court. The jury found against the validity of the will and the plaintiff in error now assigns the several rulings of the court as error.

Porter, for the plaintiff:

1. John Willingham was an incompetent witness. After allowing the widow her fifth of the personalty, and her share of the provisions on hand, we contend she would have a larger portion than under the will.

2. Griffin was for like reason competent; at all events, there was uncertainty as to which way his interest preponderates, and if it be doubtful, the doubt affects his credit. The debts of testator and of his wife might deprive him of any share ; and that these did not exist could not be determined by the court.

3. The evidence of John Willingham that testator told him two or three weeks before the making of the will, "all he could hear from some people," &c. was improperly admitted. If intended to prove testator intended to die intestate, it could not affect a will afterwards made: If designed to prove duress, it was no part of the *res gestæ*. The declarations of a party to a deed or will, whether previous or subsequent to its execution, are only hearsay, and the admission of such evidence is dangerous.—Stephens v. Van Clers, 4 Wash. C. C. R.

What was meant by "people?" Not the wife, but several persons. In all probability those cut off by the will. But there is no evidence that there was any influence, at least in the legal acceptation of the term.—Lide v. Lide's Adm., Brev. R.

4. Evidence that the will was made in carrying out an intention long entertained and expressed, which is the purport of the testimony of Whitson and Caleb Willingham, is admissible.— Couch v. Couch, 7 Ala. R. 519; Roberts v. Trawick, 13 Ala. R.

PECK, for defendants, cited this case when here before, reported in 13 Ala. 68. As to the evidence of declarations of the testator offered and excluded, they were too long before the will was made to form a part of the *res gestæ*, and as the competency of the testator was admitted, they were irrelevant; for when the case was here before, the court ruled that the making of a former will, the testators being admitted to be competent to make a will, was irrelevant. If a former will is irrelevant, much more so are mere declarations made long before the will. The objection made to the evidence of John Willingham is not raised on the record. It was not objected to, but only his competency; but if it had been, it was properly admitted.—See this case when here before.

CHILTON, J.—Upon a careful examination of this case, we think it very clearly appears that the share of the widow of Nathaniel Davis, the decedent, as secured by the will of her

husband, is much greater than the portion of the estate to which she would have been entitled had said Davis died intestate. Mrs. Davis having died a short time after the death of her husband, without children, her share of the estate belongs to her brothers and sisters. Her interest preponderating in favor of the will, her brother, John Willingham, who was offered by the contestants to defeat the will, was clearly a competent witness, as he was called upon to testify in opposition to his interest. It also follows for the same reason that Troy Griffin, who was the husband of the widow's sister, and who was offered as a witness by the executor, was incompetent, as the effect of his testimony was to sustain the will, and thus to have secured a greater interest in the estate than he would have taken in right of his wife under the statute of distribution.

2. It is recited in the bill of exceptions, that the witness Willingham stated that two or three weeks before making the will in question, he, the witness, went to the house of the decedent and found Mrs. Davis crying. After a short time the testator said to witness, "all I can hear from some people is, a will, a will, a will, but the laws of Alabama make a better will than I or any body else can make." The plaintiff in error objected to proving this declaration in the court below, but his objection was overruled, and he now insists in this court that its admission was erroneous. One of the grounds for impeaching the will relied on by the contestants is that the deceased was fraudulently induced by his wife to sign and publish it: That she took advantage of his old age and infirmities, both of body and mind, and exercised undue and improper influence over him, in order to obtain a will acceptable to her but prejudicial to contestants. Fraud or undue influence in obtaining a will is rarely proved by direct and positive testimony. It is usually made out by proof of facts and circumstances, which when taken separately may be very weak, yet when grouped together and considered collectively may fully satisfy the mind as to the *mala fides* sought to be established. So in this case, the crying of the wife, and the contemporaneous declarations of the testator, that all some persons spoke of was a will, &c. tended to show on her part great solicitude, and on his, agitation and mental embarrassment. This happened a short time before the will purports to have been executed, and we think was very properly

allowed, to go to the jury: Constituting of itself but feeble proof, yet to be weighed by them in connection with the other facts and circumstances attending the execution of the will. The rule is not so stringent as to require that proof of undue influence should be confined to the time of the execution of the will—it is sufficient that the will was executed afterwards under the control of such influence, and that by reason of it, the testator was deprived of that free agency indispensable to the making of a valid testamentary disposition of his property.—Davis v. Calvert, 5 Gill & Johns. Rep. 269.

When this case was before us, at a previous term, (13 Ala. Rep. 68-83,) we held that the declarations of the testator made before and at the time of the execution of the will, or so shortly thereafter as to form part of the *res gestæ*, may be received to prove fraud or undue influence in its execution. Under the principle then settled, this proof clearly falls, and in our opinion was admissible.

3. We are, however, clearly of opinion that the court below erred in rejecting the evidence of the declarations of the testator made before the execution of the will, that he intended to disinherit his daughters, as offered in proof by the witnesses, Whitson and Caleb Willingham. Now it is said that undue influence, such as will avoid a will, must be an influence obtained by flattery, excessive importunity or threats, or in some other mode by which dominion is acquired over the will of the testator, destroying his free agency, and constraining him to do against his free will what he is unable to refuse.—2 Greenl. Ev. 648, § 688, and authorities cited. The will before us conforms substantially to the declarations attempted to be proved. It gives to the daughters only a small, we might say a nominal sum. This proof conduced to establish that the testator, many years previous to the execution of the will in controversy, had a fixed and settled purpose to make a will similar to the one he is alleged to have executed. It was then proper, as rebutting the evidence on the part of the contestants, that the will was not the deliberate act of the deceased, but was obtained fraudulently or by the over-persuasion of his wife or others. It tends to show that the provisions in the will which exclude the daughters were not the result of any suggestion made at or near the time when the will was drafted, but that some ten years ante-

rior thereto the testator declared his intention then to disinherit his daughters, which intention was repeated five years afterwards. This proof should have gone to the jury to be weighed by them in determining whether in fact the will in question was procured fraudulently, or by the exercise of improper influence, or was made by the deceased in the exercise of a free volition, and in accordance with his intention entertained at a period when we must presume he was less under the imbecility of mind and body resulting from the decrepitude of old age.

The other points raised in argument and upon the briefs, are fully covered by the previous decision of the case, (*supra*,) and do not require here to be again noticed. Our conclusion is, that the court below mistook the law in the matter of excluding the testimony of the testator's declarations, as above set forth. Its judgment is consequently reversed and the cause remanded.