<div style="margin-left:2em">PEPPER,<br>*v.*<br>DUNLAP.</div>

---

## SUCCESSION OF SARAH EUBANKS — E. A. YARBOROUGH, Appellant.

Testatrix commenced the dictation of her will to one of the subscribing witnesses, and in the presence of the others, from a paper which she had caused to be written, and which she held in her hand ; when being interrupted by a violent fit of coughing, and the testatrix being unable to proceed with the dictation, she handed the paper to the witness to whom she was dictating, requesting him to consider it as the expression of her testamentary disposition, and to finish the copying of it on the gallery of the house, adjoining to and communicating with the room where the testatrix was lying. While the witness was executing this request, by finishing the copy of the paper handed to him, the other witnesses were on the same gallery where he was writing, but not in communication with the writer. After the copy was made, it was examined by the testatrix, and presented by her to the witness, with the declaration made by her that it contained her last will. By the Court: Under the circumstances, we consider that this paper was *written* (in the words of the second paragraph of Article 1574) *out of the presence of the witnesses*, with the exception of that portion which (as provided by the first paragraph of the same article) was dictated by the testatrix in their presence.

It is not proper to go into an inquiry, at the time of probating a will, whether the testator was of sound and disposing mind and memory at the time of making it.

The testimony of witnesses, that the testator told them that the will was entirely written by him, is not sufficient proof of an olographic testament, to authorize its probate.

SUCCESSION OF   The only proof admissible of olographic testaments, is the testimony of two witnesses, that they re-
EUBANKS.            cognize the hand writing, as having often seen the testator write and sign, during his lifetime.   C.
                    C. 1648.

                Although under Article 1584 of the Civil Code, women cannot be subscribing witnesses to a will, yet
                    an olographic will may be established upon their testimony, if in other respects they are credible
                    and competent.

APPEAL from the District Court of East Feliciana, *Stirling*, J.   *Bowman* and *Delee*, and *E. T. Merrick*, for appellant.   *W. D. Winter*, and *Muse & Merrick*, for appellees.

BUCHANAN, J.   Mrs. *Eubanks* died in July, 1853, having made two wills, one in the nuncupative form under private signature, on the 4th of May, 1853, and the other, olographic, on the 28th of June, 1853.

In both, she constituted as universal legatee, her aunt by affinity, Mrs. *Louisa Green*, the appellee.   In the nuncupative will, the testatrix made a legacy to her brother, *Josiah Yarborough*, of a slave boy named *Cornelius;* which legacy she revoked by her olographic will.   After her death, the universal legatee, assisted by her husband, presented the two wills to the District Court for probate.   As the deceased had a brother living, and nephews and nieces, children of three other brothers who had died, the judge caused this brother, and the tutors of the nephews and nieces, to be notified of the day assigned for receiving proof of the wills.   A gentleman of the bar, Mr. *Merrick*, was also notified, as attorney appointed to represent the absent heirs.

On the day named, after hearing witnesses, and in presence of all parties, the court rendered a judgment admitting the nuncupative will under private signature to probate and execution, but rejecting the olographic will for want of the proof required by law.   From this judgment, Mrs. *Emeline Yarborough*, tutrix of the minor child of *David M. Yarborough*, deceased, and Mr. *Merrick*, attorney of absent heirs, have appealed, and the universal legatee has joined in the appeal, so far as to pray for a reversal of the judgment in relation to the olographic will.

The appellants assign for error:

I. That it appears from the *proces verbal* of the testimony of the witnesses received by the court, that the pretended nuncupative will, by private act, was written by a witness in the presence of the testatrix, from a paper which he, said witness, had previously prepared, and said pretended will was not dictated by the testatrix, nor written from her dictation.

Nor was said pretended will written out of the presence of the witnesses, nor did the said testatrix declare to the witnesses, that said paper contained her last will and testament, as required by Article 1574 of the Civil Code.

Neither does it appear that said pretended nuncupative will has any of the formalities required by law.

II. It appears from said transcript, that at the time of receiving the testimony for the probating of said pretended will, the court refused appellant the right of showing by witnesses, that said *Sarah A. Eubanks* was not of a sound and disposing mind and memory, at the time of making said pretended will.

Upon the first ground of error, we find that there was a substantial compliance with the requirements of Article 1574 of the Code.

The evidence shows that the testatrix commenced the dictation of her will, to one of the subscribing witnesses, and in the presence of the others, from a paper which she had caused to be written, and which she held in her hand; when being interrupted by a violent fit of coughing, and unable to proceed

with her dictation, she handed the paper to the witness, to whom she was dictating, requesting him to consider it as the expression of her testamentary dispositions, and to finish the copying of it on the gallery of the house, adjoining to and communicating with the room where the testatrix was lying. While the witness was executing this request by finishing the copy of the paper handed to him, the other witnesses are proved to have been on the same gallery where he was writing, but not in communication with the writer. Under the circumstances, we consider that this paper was written (in the words of the second paragraph of Article 1574,) *out of the presence* of the witnesses, with the exception of that portion which (as provided by the first paragraph of the same article) was dictated by the testatrix in their presence. After the copy was made, it was examined by the testatrix, and presented by her to the witnesses, with the declaration made by her, that it contained her last will. After which, the formalities required by Article 1575, were punctually fulfilled.

Upon the second error assigned, we think the court did not err in rejecting the evidence offered by the appellants at the time of probating the will, to show that the testatrix was not of sound and disposing mind and memory, at the time of making her will. The only business before the court was, the opening and proof of the formalities required for the probate and execution of the will. C. C. 1641.

There was no appearance in court of any party contesting the will; no issue joined upon the capacity of the testatrix to make a will. To have admitted the evidence spoken of in the assignment of error, would have been a vain thing, because a judgment rendered upon such evidence, could not have been *res judicata* as to any body.

The District Judge properly referred the appellants to their action in nullity of the testament.

The appellee complains that there is error to her prejudice, in refusing probate to the olographic will. She contends that the testimony of witnesses, that Mrs. *Eubanks* had told them said will was entirely written by her, satisfies the law. We think otherwise. Article 1648 of the Code is express, that the only proof admissible of olographic testaments, is the testimony of two witnesses, that they recognize the handwriting, as having often seen the testator write and sign during his lifetime.

There is a bill of exceptions in the record, taken by appellee to the rejection of the evidence of Mrs. *Goings*, and other females who were offered to prove the handwriting of the olographic will. They were rejected upon the Article 1584 of the Code, which declares women to be incapable of being witnesses to testaments. We differ from the District Court in the application of that article to the present case. We understand that article to mean, that women cannot be subscribing witnesses to those testaments which, by law, require witnesses—that they cannot be counted in the number of subscribing witnesses requisite to give validity to a nuncupative or to a mystic will, and without which, by Article 1588, a will of either of those classes is a nullity.

But the olographic will requires no subscribing witnesses. The proof necessary to establish it, according to an article just cited (1648) is, "the declaration of two credible persons, who must attest that they recognize the testament as being entirely written, dated, and signed in the testator's handwriting, as having often seen him write and sign during his lifetime." The words used in this article, *two credible witnesses*, embrace all those who, by Articles 2260 and 2261, are competent and credible witnesses of any covenant or fact in civil

20

matters.   The construction which we give to the Article 1584, is favored and
confirmed by the phraseology of the French text—"Sont absolument incapa-
bles d'être témoins *dans* les testamens."

. It is therefore adjudged and decreed, that the judgment of the District Court,
so far as relates to the nuncupative will under private signature, of *Sarah A.
Eubanks*, be affirmed; that as relates to the olographic will of said *Sarah A.
Eubanks*, the cause be remanded, with instructions to the court not to reject
the evidence of Mrs. *Goings*, and other female witnesses, offered to prove the
said will, as incompetent by reason of sex; and that the appellants pay the
costs of this appeal.