IN THE MATTER OF THE ESTATE OF JULIA GODSIL, DE-
CEASED.

**Testamentary Capacity—Declarations of Testator.**—The conduct
and declarations of a testator, both before and after the execution of
his will, are competent to show his capacity or incapacity at the time
of making the will. The weight of the declarations depends upon
the proximity in point of time to the act, and those made before
are more significant than those made after.

**Construction of Will—Declarations of Testator.**—The declarations
of a testator are not admissible to aid in construing his will, unless
made in close proximity to the time of making the will, and then
only in cases of ambiguity.

Motion for new trial. The question involved in this case
was the admissibility of the conduct and declarations of the
testator prior and subsequent to the execution of his will.

M. C. Hassett and J. G. Severance, for the contestants, mov-
ing parties.

D. H. Whittemore, contra.

COFFEY, J. On the question of mental condition, whether
raised as to unsoundness or undue influence, the conduct and
declarations of the testator, both before and after execution,
are competent to show capacity or incapacity, if they tend
to show its existence at the time of execution, but not other-
wise. A sudden change to eccentric and peculiar habits is
cogent evidence of insanity. Suicide is not conclusive evi-
dence of insanity.

The testator's correspondence, his manner of conducting
business, etc., are competent. The fact that others dealt with
him as sound or unsound of mind is competent when adduced
merely to lay a foundation for evidence of the manner in
which he received such treatment, but not otherwise.

His declarations, if not part of the res gestae of execution,
must be offered not as his statement of facts, of fraud or un-
due influence, for in this respect they are hearsay and incom-
petent, but as statements which, independent of their truth or
falsity, disclose his state of mind, strength or weakness of will,
independence or infirmity of purpose, capacity or imbecility.

What the testator said the law does not credit, for it is unsworn; but the fact that he said it the law receives, because to ascertain his state of mind we must hear how he talked, and read what he wrote. His declarations are not evidence of the fact declared, but it is evidence of the state of mind from which the declaration proceeded. With this purpose great latitude is allowed in the admission of such evidence. The rule allows *previous* as well as *subsequent* declarations as to testamentary intentions to be received in evidence.

The weight of the declarations depends upon their proximity in point of time to the act, and on whether they were before or after it.

Declarations before the act are more pregnant of presumption than those made after it; and a state of weakness shown to exist before the act, being presumed to continue, affords more influential evidence than if only shown to exist after the act, because it is possible that the weakness might have intervened.

Unreasonableness of a will is, alone, no evidence of incapacity, but in connection with evidence of *mental unsoundness* or of *weakness* and *influence* or *intoxication,* it is to be considered in corroboration or rebuttal of those allegations; and in such case evidence of the situation of the family and property is competent for the purpose of throwing light upon the reasonableness of the will. In proportion as the will departs from reasonable and natural division of the estate, evidence of mental competency and evidence to rebut circumstances tending to show undue influence become necessary: Abbott's Trial Evidence, p. 115, par. 63, and see cases cited in reference thereto in note. Also in 1 Jarman on Wills, 5th Am. ed., 438.

In the case of Doe v. Allen, the court said the declarations admitted as evidence had been made by the testatrix ten months after the date of her will, and were objected to on that account.

Lord Denman, C. J., concluded the judgment of the court by saying that none of the cases which were referred to in the books to show that declarations contemporaneous with the will were alone to be received establish such a distinction. Neither had any argument been adduced which convinced the

court that those subsequent to the will ought to be excluded whenever any evidence of declarations could be received. They might have more or less weight according to the time and circumstances under which they were made, but their admissibility depended entirely upon other considerations. The same remarks would apply to declarations made before the will.

Such were the views adopted by this court, Rearden, Judge, both in the Estate of Freud and Estate of Rogers.

Where a will is resisted on the ground that the testator was not of sound mind, or that it was procured by undue influence, which involves his mental condition at the time it was executed, his *statements* both *prior* and *subsequent* to the making of the will touching the disposition of his property and *inconsistent* with the *will*, in connection with other evidence tending to prove a want of mental capacity, are competent: Waterman v. Whitney, 11 N. Y. 157, 62 Am. Dec. 71.

To the same effect and valuable as containing approved instructions to the jury: Bates v. Bates, 27 Iowa, 110, 1 Am. Rep. 260.

Evidence of the condition of the testator's mind both before and after the execution is admissible: Terry v. Buffington, 11 Ga. 337, 56 Am. Dec. 423.

The conduct and declarations of the testator, both *before* and *after* the execution, are admissible to show his mental condition: Boylan v. Meeker, 28 N. J. L. 274; Colvin v. Worford, 20 Md. 357; McTaggart v. Thompson, 14 Pa. 149.

In determining the question as to the mental capacity of a testator at the time of executing a will the law admits proof of his words and acts, prior and subsequent to that point of time: Canada's Appeal, 47 Conn. 450.

Incapacity to make a will may be inferred by the jury from facts *anterior* and *subsequent* to its execution, where there is no evidence of such infirmity at the time of execution and the subscribing witnesses are uncontradicted: Irish v. Smith, 8 Serg. & R. 573, 11 Am. Dec. 648, and note.

To the same effect and containing an elaborate and learned discussion of the entire subject, see Davis v. Calvert, 5 Gill & J. (Md.) 269, 25 Am. Dec. 282.

Proof of insanity, both *prior* and *subsequent* to the making of the will, is admissible: Estate of Toomes, 54 Cal. 509, 35 Am. Rep. 83.

The proposed testimony of Mrs. Mullen was to prove that the testatrix was dissatisfied with certain bequests in the will, and that she declared her intention to change them when Judge Cooney returned from Chicago, but no change was made. The fact that she proposed to await for Judge Cooney's return would show that testatrix still retained confidence in Judge Cooney as her legal adviser.

The proposed testimony of Patrick Lucy (a brother of contestants) was to show the declarations of testatrix on the afternoon previous to her demise (fourteen months after the execution of the will). Also when she was vomiting and retching in the throes of death, her condition and sickness was of so serious a character that even her then counsel (now contestant's counsel) refused to make her will, and postponed it till next day, and she died that night.

Such testimony, under favorable circumstances, is looked upon by the court with disfavor for any purpose.

"But in many well-considered cases declarations of the testator, tending to show his wishes in regard to the disposition of his property, made for periods *more or less remote from the time of the execution of the will,* have been rejected": 1 Redfield, p. 537.

"Declarations after the will . . . . do not furnish any evidence whatever of the testator's incapacity, or of undue influence, *and are not* admissible for that purpose": 1 Redfield, p. 569, note 67.

"As the law requires wills . . . . to be in writing, it cannot . . . . permit parol evidence to be adduced either to contradict, add to or explain the contents of such will, and the principle of this rule evidently demands an inflexible adherence to it": 1 Jarman, 5th ed., pp. 409, 410.

"The only cases in which evidence to prove intention is admissible are those in which the description in the will is ambiguous in its application": 1 Jarman, 5th ed., p. 437.

The case of Doe v. Allen, on page 438, cited by contestants, "was to clear up an ambiguity in the will, by the declarations of the testator."

The established rule seems to be, from modern decisions and text-books, to not admit the declarations of testator, except in close proximity to the making of the will, if at all, except in cases of ambiguity.

The authorities cited by counsel for contestants either do not apply to this case or are against his position.

The motion for a new trial should be, and it is, *denied.*

---

### DECLARATIONS OF A TESTATOR TO SUSTAIN, DEFEAT, OR AID IN THE CONSTRUCTION OF HIS WILL.

General Divisions of the Subject.—The questions usually presented, where an alleged will is drawn in question, are: 1. Was it executed by the supposed testator as and for his will and in conformity with the requirements of the law? 2. If so executed, was he possessed of sufficient testamentary capacity? 3. If he had the proper testamentary capacity, was his act the result of such duress, fraud or other undue influence that the will will not be received and carried out as testamentary; and 4. If the will was properly executed and not infected with undue influence or want of sufficient testamentary capacity, did it continue unrevoked at the time of the testator's death? 5. Where the validity of the will is conceded, but doubt remains respecting the intent of the testator after considering all the provisions of his will, his declarations may in rare instances be admissible to assist in removing such doubt. Upon all the first four questions here suggested declarations of testators may be offered, and in most, if not all, may be received either to support or overthrow the will. The reception is, nevertheless, for a very limited purpose, and the object of this note is to present the general rules upon the subject and the exceedingly important limitations thereto.

Where Part of the Res Gestae.—The rule permitting the admission of declarations when they form a part of the res gestae is necessarily applicable to wills. Except where the will is olographic, it must have been acknowledged by the testator in the presence of witnesses whom he must have requested to subscribe it as such, and whatever the testator says, at the time of the alleged execution, to the witnesses of his will is admissible, whether bearing on the fact of execution or tending to show the condition of his mind or his testamentary capacity, or that his action is or is not the result of his free will or of undue influence: Roberts v. Frawick, 13 Ala. 68; Marston v. Marston, 17 N. H. 503, 43 Am. Dec. 611; Smith v. Fenner, 1 Gall. 170, Fed. Cas. No. 13,046. The declarations of a testator made

either before or after the execution of his will are, however, not a part of the res gestae, and are not admissible as such, though they but a few days preceded· or followed such execution: Comstock v. Hadlyme Ecc. Soc., 8 Conn. 244, 20 Am. Dec. 100; Runkle v. Yates, 11 Ind. 95; Throckmorton v. Holt, 180 U. S. 552, 21 Sup. Ct. 475, 45 L. Ed. 663.

Relating to Fact of Execution of Will.—Where the execution of a will is sought to be proved or disproved, the issue presented may involve the inquiry whether the paper claimed to have been executed as a will is a forgery, or though it is shown or conceded not to be a forgery, whether the acts in addition to the signing by the testator were such as to amount to a substantial compliance with the law controlling ·the execution of wills. There are many cases containing the general statement that the declarations of a testator are not admissible to prove the execution of a will: Succession of Eubanks, 9 La. Ann. 147; Collins v. Elliott, 1 Har. & J. 1; Johnson v. Hicks, 1 Lans. 150; Jackson v. Betts, 6 Cow. 377; Kennedy v. Upshaw, 64 Tex. 411; and other and equally numerous decisions affirming that, in opposition to evidence showing the execution of a will, the declarations of a testator are inadmissible though to the effect that he had made no will and intended to die intestate: Leslie v. McMurtry, 60 Ark. 301, 30 S. W. 33; Wells v. ·Wells, 144 Mo. 198, 45 S. W. 1095; In re Pemberton's Will, 40 N. J. Eq. 520, 4 Atl. 770; Pemberton v. Pemberton, 41 N. J. Eq. 349, 7 Atl. 642; In re Lawlor's Will, 86 App. Div. 527, 83 N. Y. Supp. 726; In re Hopkin's Will, 35 Misc. Rep. 702, 72 N. Y. Supp. 415. Nevertheless, the question is not altogether free from doubt. The evidence offered does not usually include declarations made by the alleged testator directly affirming or denying the alleged forgery. More usually the evidence relates to declarations respecting intended testamentary dispositions from which, if the evidence were received, the court or jury might rationally reach a conclusion as to the probability or improbability of the forgery. In our judgment, the declarations of an alleged testator, when if received they would corroborate other evidence before the court to prove or disprove the genuineness of the signature, should be regarded as admissible, and more especially when the will is olographic and must be admitted to probate, or probate thereof denied on testimony relating solely to whether it is in the handwriting of the testator. With respect to such wills, while the law sanctions them, it leaves them· dependent on the opinion of witnesses as to whether the will is wholly in the handwriting of the testator, and where there is evidence on both sides of this issue, it would appear that declarations of a testator tending to either strengthen or weaken the probability that the instrument is in his handwriting ought to be received. We cannot find, however, that with respect to the subject here under consideration any distinction has been recognized between olographic and. duly witnessed and attested wills. In the case

of both, the decisions, so far as number is concerned, favor the admission of declarations of the testator tending to show the execution or nonexecution of the will: Succession of Morvant, 45 La. Ann. 207, 12 South. 349; Hoppe v. Byers, 60 Md. 381; In re Taylor's Will, 10 Abb. Pr., N. S., 300; Swope v. Donnelly, 190 Pa. 417, 70 Am. St. Rep. 637, 42 Atl. 882; Johnson v. Brown, 51 Tex. 65; Turner v. Hand, 3 Wall. Jr. 88, Fed. Cas. No. 14,257. The argument that the admission of such evidence ought to be denied on the ground that it invites, and must lead to the commission of, perjury seems entitled to little consideration in the case of olographic wills, which are by statute declared valid when shown to be wholly in the handwriting of the testator. Whether they are in such writing must usually, if not always, be proved solely by parol testimony, and what is worse still, in many cases, by the testimony of professional experts. As it is the policy of the law to permit the sustaining or overthrowing of alleged wills by parol testimony, the fear and possibility of perjury does not seem to warrant the exclusion of the declarations of the person whose alleged will is in question, and which declarations, in many instances, must be material, if not conclusive, on the question. It must be admitted, however, that at the present time the judicial pendulum is swinging in the opposite direction, and unless soon stayed, must reach a point whence all declarations of a decedent not constituting a part of the res gestae of the execution of his alleged will must be excluded from evidence where there is no doubt of the condition of his mind or testamentary capacity and of his freedom from undue influence: In re Gregory's Estate, 133 Cal. 131, 65 Pac. 315; Estate of James, 124 Cal. 653, 57 Pac. 578, 1008; Boylan v. Meeker, 28 N. J. L. 274; In re Gordon's Will, 50 N. J. Eq. 397, 26 Atl. 268; Throckmorton v. Holt, 180 U. S. 552, 21 Sup. Ct. 474, 45 L. Ed. 663.

Turning to the cases where there was no issue as to the genuineness of the signature of the testator and the question involved related to the manner of the execution of the will in other respects, we find a like conflict in the authorities and a like majority in favor of the admission of his declarations. Thus, in Scott v. Hawk, 105 Iowa, 467, 75 N. W. 368, where it was shown that the subscribing witnesses to the will were all dead, the evidence of an attorney was received to the effect that the deceased, on being shown the will in his lifetime and examining the signatures, pronounced it his will, the court saying, "that the decedent, upon an examination of the instrument and the signatures thereto, declared it his will is convincing evidence of its execution by him." So, in Beadles v. Alexander, 9 Baxt. 604, after proof of the signatures of the testator and of the witnesses and receiving the testimony of one of them that, to the best of his knowledge, the testator was not present when the will was witnessed, evidence was offered and received to the effect that the testator had said that he executed the will in the presence of both the subscribing wit-

nesses, and that they had then attested it at his request. The supreme court said: "These statements of the testator were objected to, and the question is, Were they properly admitted? After careful consideration, we are of opinion they were. It is true it is laid down in Redfield on Wills, as the result·of the authorities, that statements of the testator, not parts of the res gestae and not showing the state of the testator's mind, but statements introduced merely to establish a particular fact by the force of the admission are hearsay testimony and not admissible. But a prima facie case arises upon proof of the handwriting of the subscribing witnesses, and it is conceded that when the subscribing witnesses fail to prove the due execution of the will by the testator, that they may be contradicted or impeached, and the fact established by other testimony. The statements of the testator to this direct point do but most strongly establish the fact. They do not stand as mere hearsay declarations of other parties. They are the declarations of the testator as to his own acts, and about which he must certainly know, and in general he has no motive to speak falsely, and both parties claim under him, one as devisee or legatee, the other as distributee and heir. His declarations are not introduced to establish the particular fact by force of the admissions·or statements alone, but for the purpose of corroborating and supporting the presumption arising from the fact that the will bears the genuine signatures of two competent subscribing witnesses and to contradict the testimony of the witness who, although he admits his signature, yet denies the testator's presence." A like result followed in Re Oliver's Will, 13 Misc. Rep. 466, 34 N. Y. Supp. 706, 25 Civ. Proc. 25. On the other hand, the supreme court of Missouri in Walton v. Kendrick, 122 Mo. 504, 27 S. W. 872, 25 L. R. A. 701, felt compelled to reverse a judgment in favor of a will on the sole ground that the evidence of declarations of the decedent had been received for the purpose of showing that, though he did not sign the will himself, it was signed in his presence and by his direction, that mode of signing being authorized by the statute of the state.

Relating to Condition of Mind or Testamentary Capacity.—The one point upon which the authorities agree is that declarations of a decedent, oral or written, whether made at, before, or after the execution of his alleged will, are admissible for the purpose of showing his mental condition enabling the court or jury to determine his testamentary capacity: Coghill v. Kennedy, 119 Ala. 641, 24 South. 459; Estate of Mullin, 110 Cal. 252, 42 Pac. 645; Estate of Calkins, 112 Cal. 296, 44 Pac. 577; Clements v. McGinn (Cal.), 33 Pac. 920. But the declarations of a testator, while of unsound mind, that he was of unsound mind and under undue influence at the time of the execution of his will, do not tend to prove the truth of the matters so declared:.Estate of Lang, 65 Cal. 19, 2 Pac. 491; Comstock v. Hadlym Ecc. Soc., 8 Conn. 254, 20 Am. Dec. 100; Ball v. Kane, 1 Penne. 90, 39 Atl. 778; Mallery v. Young, 94 Ga. 804,

22 S. E. 142; Baker v. Baker, 202 Ill. 595, 67 N. E. 410; Lucas v. Cannon, 13 Bush, 650; Wise v. Foote, 81 Ky. 10; Morris v. Morton's Ex. (Ky.), 20 S. W. 287; Oberdorfer v. Newberger (Ky.), 67 S. W. 267; Roberts v. Bidwell, 136 Mich. 191, 98 N. Y. 1000; Sheehan v. Kearney (Miss.), 21 South. 41, 35 'L. R. A. 102; Crowson v. Crowson, 172 Mo. 691, 72 S. W. 1065; Pattee v. Whitcomb, 72 N. H. 249, 56 Atl. 459; Middleditch v. Williams, 45 N. J. Eq. 726, 17 Atl. 826, 4 L. R. A. 738; In re Brunor, 21 App. Div. 259, 47 N. Y. Supp. 681; In re Woodward, 167 N. Y. 28, 60 N. E. 233; In re Burns' Will, 121 N. C. 336, 28 S. E. 519; Herster v. Herster, 122 Pa. 239, 9 Am. St. Rep. 95, 16 Atl. 342; McIntosh v. Moore, 22 Tex. Civ. App. 22, 53 S. W. 611; Robinson v. Hutchinson, 26 Vt. 38, 60 Am. Dec. 298.

If his declarations or acts tended to show that he was a maniac, there could be no doubt of the admissibility of evidence of them, but usually the questions presented are not so extreme in character. A testator may be without the requisite testamentary capacity though not a maniac, and may have such capacity though in certain places or occasions he may have done acts or made statements or other declarations apparently incompatible with sanity. Hence, it is often proper to show facts bearing, though somewhat remotely, on the question of testamentary capacity. The disposition made of his property by a testator may seem strange and yet may have been the result of a testamentary purpose formed when he was confessedly of unquestionable testamentary capacity, and this may be established by receiving in evidence preceding wills in which the same, or substantially the same, testamentary purpose was expressed: Taylor v. Pegram, 151 Ill. 106, 37 N. E. 837; Nieman v. Schnitker, 181 Ill. 400, 55 N. E. 151; Thompson v. Ish, 99 Mo. 160, 17 Am. St. Rep. 552, 12 S. W. 510. Generally it may be affirmed that all declarations by a testator respecting the disposition of his property which at the time he intended to make are admissible to show either that the disposition made in his will conformed to his purpose so expressed or deviated substantially therefrom, and may lead the jury to the conclusion that what he did in the one case was the result of a testamentary purpose formed in his mind when undoubtedly sane, and in the other is at unaccountable variance with such purpose, and may, therefore, have been the product of an insane delusion or of some other operation of a disordered mind: Williamson v. Nabers, 14 Ga. 285; Hill v. Bahrns, 158 Ill. 314, 41 N. E. 912; Lamb v. Lamb, 105 Ind. 456, 5 N. E. 171; Staser v. Hogan, 120 Ind. 207, 21 N. E. 911, 22 N. E. 990; Goodbar v. Lidikey, 136 Ind. 1, 43 Am. St. Rep. 296, 35 N. E. 691; Bever v. Spangler, 93 Iowa, 576, 61 N. W. 1072; Renand v. Pageot, 102 Mich. 568, 61 N. W. 3; Hammond v. Dike, 42 Minn. 273, 18 Am. St. Rep. 503, 44 N. W. 61; Den v. Vancleve, 5 N. J. L. 589; Waterman v. Whitney, 11 N. Y. 157, 62 Am. Dec. 71; Tunison v. Tunison, 4 Brad. Sur. 138; McTaggart v. Thompson, 14 Pa. 149; Brown v. Mitchell, 88 Tex. 350, 31 S.

W. 621, 36 L. R. A. 64; McMechem v. McMechem, 17 W. Va. 683, 41 Am. Rep. 682.

The question of the testator's knowledge of the contents of his will may also be material for the purpose of aiding the determination of the question of his testamentary capacity, though it is more frequently presented when the will is claimed to have been procured by fraud or to be the offspring of undue influence. In either case it is proper to prove his declarations showing that he had such knowledge, and to thereby rebut the claim that he acted without testamentary capacity or in obedience to a will other than his own: Davis v. Rogers, 1 Houst. 44; Reel's Exr. v. Reel, 8 N. C. 248, 9 Am. Dec. 632; In re Wheelock's Will, 76 Vt. 235, 56 Atl. 1013; Maxwell v. Hill, 89 Tenn. 584, 15 S. W. 253; Harleston v. Corbett, 12 Rich. 604.

The state of the testator's affection toward one of his children or other heirs may also be material as bearing upon his testamentary capacity, for it may show a disposition of his property to be not irrational, which, in the absence of evidence upon this subject, might be attributed to an insane mind, and his declarations are always admissible upon this subject, because they may tend to show why an heir or other person was excluded from his will or made a special object of his bounty: Kilpatrick v. Jenkins, 96 Tenn. 85, 33 S. W. 819.

The declarations offered may also bear upon some other issue as to which they are clearly inadmissible. Thus, they may tend to show not only want of testamentary capacity, but also the controlling presence of undue influence. They are not on that ground inadmissible. If it is claimed that the testator was without the requisite testamentary capacity, his declaration made subsequent to the execution of the will that he had to make it as he did to have peace at home is admissible to show his mental condition, and if the proponents of the will fear that the reception of the testimony may operate prejudicially to them on the issue of undue influence, their only remedy is to have the jury instructed that it must be considered by them solely on the question of mental capacity: Peery v. Peery, 94 Tenn. 328, 29 S. W. 1. This remedy, it must be admitted, is rarely adequate.

### Upon the Issue of Fraud or Undue Influence.

To Show Acts of.—The decisions are well-nigh unanimous in affirming that the declarations of a testator are not admissible for the purpose either of proving or disproving acts of undue influence over him, or the exercise of fraud whereby his will is claimed to have been procured: Coghill v. Kennedy, 119 Ala. 641, 24 South. 459; Appeal of Vivian, 74 Conn. 257, 50 Atl. 797; Jones v. Grogan, 98 Ga. 552, 25 S. E. 590; Underwood v. Thurman, 111 Ga. 325, 36 S. E. 788; Hayes v. West, 37 Ind. 21; Wall v. Dimmitt, 114 Ky. 923, 72 S. W. 300; Griffith v. Diffenderfer, 50 Md. 466; Zibble v. Zibble, 137 Mich. 655, 92 N. W. 348; Bush v. Bush, 87 Mo. 480; Gordon v. Burris, 141 Mo. 602, 43 S. W. 642; Schierbaum v. Schemme, 157 Mo. 1, 57 S. W.

526; In re Pemberton, 40 N. J. Eq. 520, 4 Atl. 770; Le Bau v. Vanderbilt, 3 Redf. Sur. 384; In re Palmateer's Will, 78 Hun, 43, 28 N. Y. Supp. 1062; Marx v. McGlynn, 4 Redf. Sur. 455, 88 N. Y. 357; Kaufman v. Caughman, 49 S. C. 159, 61 Am. St. Rep. 808, 27 S. E. 16; Earp v. Edgington, 107 Tenn. 23, 64 S. W. 40; McElroy v. Phink (Tex. Civ. App.), 76 S. W. 753; Townson v. Moore, 11 App. D. C. 377. Hence, it is not permissible to receive in evidence his declarations to the effect that certain persons influenced him by threats or importunities, or statements concerning persons who were made the special objects of his bounty, or, on the other hand, were excluded therefrom, or that other means were employed tending to restrain his free action, or in any other respect to produce a will which cannot be justly regarded as his own: Calkin's Estate, 112 Cal. 294, 44 Pac. 577; Gregory's Estate, 133 Cal. 131, 65 Pac. 315; McFadin v. Catron, 120 Mo. 252, 25 S. W. 506; Doherty v. Gilmore, 136 Mo. 414, 37 S. W. 1127; Defoe v. Defoe, 144 Mo. 458, 46 S. W. 433; Rusling v. Rusling, 36 N. J. Eq. 603; Pemberton v. Pemberton, 41 N. J. Eq. 349, 7 Atl. 642; Jackson v. Kniffen, 2 Johns. 31, 3 Am. Dec. 390; Kaufman v. Caughman, 49 S. C. 159, 61 Am. St. Rep. 808, 27 S. E. 16; Robinson v. Hutchinson, 26 Vt. 38, 60 Am. Dec. 298. Nor can undue influence be established by evidence of the declarations of the testator showing the denial by him of the fact that he had made a will or expressing a testamentary purpose inconsistent with the will in question: In re Storer's Will, 28 Minn. 9, 8 S. W. 827; Barker v. Barker, 36 N. J. Eq. 259; Manogue v. Herrell, 13 App. D. C. 455. There is, it must be admitted, one decision to the effect that declarations of a testator made before the execution of his will are admissible for the purpose of proving fraud in procuring it: Roberts v. Trawick, 17 Ala. 55, 52 Am. Dec. 164. It has not been followed elsewhere so far as we can ascertain, and undoubtedly it is opposed to the decided weight of authority on the subject: Moore v. McDonald, 68 Md. 321, 12 Atl. 117; Kitchell v. Beach, 35 N. J. Eq. 446; Howell v. Barden, 3 Dev. 548. A number of decisions may be found which on first impression seem not entirely reconcilable with what we have said concerning the inadmissibility of a testator's declarations for the purpose of proving acts of undue influence. All, with the possible exception of In re Last Will of Hollingsworth, 58 Iowa, 526, 12 N. W. 590, and Parsons v. Parsons, 66 Iowa, 754, 21 N. W. 570, 24 N. W. 564, were, in truth, only in support of the proposition set out in the subdivision following this, that such declarations are not admissible in evidence for the purpose of establishing acts of undue influence, but there being other evidence tending to show facts, then the declarations of the testator are admissible for the purpose of showing that he was susceptible to the influence attempted to be exercised over him.

**To Show Condition and Susceptibility of Testator's Mind.**—We have already stated that the declarations of a testator, though made

before or after the execution of his will, are admissible as bearing on the condition of his mind and his testamentary capacity. Undue influence, short of actual coercion, can rarely produce the effect desired on a person in full physical and mental health, and where a will is claimed to be the product of undue influence, the claim must ordinarily be supported by evidence sufficient not merely to establish the influence, but further, to indicate that the mind of the testator was susceptible to it. Hence all declarations of a testator tending to show such susceptibility are admissible, as where they disclose a testamentary purpose at variance with that expressed in the will, or make direct claims that the will does not express the testator's wishes and attribute this to the influence exercised over him by others, or where he admits or affirms the domination of certain persons over him and his inability to resist it: Dennis v. Weeks, 51 Ga. 24; Stephenson v. Stephenson, 62 Iowa, 163, 17 N. W. 456; In re Goldthorp's Estate, 94 Iowa, 336, 58 Am. St. Rep. 400, 62 N. W. 845; Lucas v. Cannon, 13 Bush, 650; Jones v. McLellan, 76 Me. 49; Shailer v. Bumstead, 99 Mass. 112; Potter v. Baldwin, 133 Mass. 427; Beaubien v. Cicotte, 12 Mich. 459; In re Hess' Will, 48 Minn. 504, 31 Am. St. Rep. 665, 51 N. W. 614; Rusling v. Rusling, 35 N. J. Eq. 120; Rambler v. Tryon, 7 Serg. & R. 90, 10 Am. Dec. 444; Robinson v. Robinson, 203 Pa. 400, 53 Atl. 253; Patterson v. Lamb, 21 Tex. Civ. App. 512, 52 S. W. 98; Campbell v. Barrera (Tex. Civ. App.), 32 S. W. 724; Bryant v. Pierce, 95 Wis. 331, 70 N. W. 297. His declarations, it is said, do not of themselves establish undue influence or fraud, but they do tend to show what manner of man he was when making them, and may, in connection with other evidence, convince the jury that the will in question is fatally infected with undue influence.

It is said that the declarations of a testator made at the time of the execution of his will are admissible on the issue of undue influence, as a part of the res gestae. But his declarations made before or after the making of the will and not constituting a part of the res gestae are inadmissible, either to prove the exercise or the effect of undue influence, except as they reveal the state of his mind contemporaneous with the declarations themselves; their effect should be restricted to the question of his condition of mind, and they should not be regarded as narratives of the exertion or of the effect of undue influence: Estate of Arnold, 147 Cal. 583, 82 Pac. 252; Estate of Donovan, 140 Cal. 390, 73 Pac. 1981; Estate of Gregory, 133 Cal. 131, 65 Pac. 315; Estate of Calkins, 112 Cal. 296, 44 Pac. 577; Nelson v. McCallahan, 55 Cal. 308; Gwin v. Gwin, 5 Idaho, 271, 48 Pac. 295. Statements by the testator to his attorney, directing the latter how to draw the will, are admissible: Estate of Young, 33 Utah, 382, 126 Am. St. Rep. 843, 94 Pac. 731.

**To Rebut Claim of Undue Influence.**—Where evidence is offered and received tending to prove undue influence, it is, of course, permissible to receive counter-evidence, and such counter-evidence is

not restricted to proving that the acts of undue influence testified to did not occur, but may extend to proving every other fact from which it may be reasonably inferred that, whether undue influence was exercised or not, the will in question is not the result of that influence and that the testamentary purposes expressed therein are those of the testator and not due to the submission of his will or judgment to the will of another. What these testamentary purposes were are inferable from his declarations both before and after the execution of the will, and those declarations are admissible where, when made before such execution, they show an intention to make a disposition of his property conforming to that expressed in the will, or to exclude from his bounty his heirs at law, or some of them: Roberts v. Trawick, 17 Ala. 55, 52 Am. Dec. 164; Appeal of Dennison, 29 Conn. 399; Kaenders v. Montague, 180 Ill. 300, 54 N. E. 321; Dye v. Young, 55 Iowa, 433, 7 N. W. 678; Stephenson v. Stephenson, 62 Iowa, 163; Gardner v. Frieze, 16 R. I. 640, 19 Atl. 113; Kaufman v. Caughman, 49 S. C. 159, 61 Am. St. Rep. 808, 27 S. E. 16; or when made after the execution, they show that he understood the will and was satisfied with it: Moore v. Gubbins, 54 Ill. App. 163; or disclosed reasons for the disposition of his property made therein: Wood v. Sawyer, 61 N. C. 251. Generally, it may be affirmed that all declarations made by a testator in harmony with his will, whether before or after its execution, are admissible to repel the inference that it was the product of undue influence exercised over him. Nor need these declarations in express terms relate to the will. They may consist of statements of his feelings, affections, and emotions, and tend to show that the exclusion from his bounty of his heirs at law or others who would seem to be the natural objects of his solicitude, or that his preference given to one of such heirs over others, or his devise or bequest in favor of a stranger to his blood, were the expression of his testamentary purpose and not of his submission to influences exercised over him by another: Schieffelin v. Schieffelin, 127 Ala. 14, 28 South. 687; Harp v. Farr, 168 Ill. 459, 48 N. E. 113; Mooney v. Olsen, 22 Kan. 69; Bush v. Delano, 113 Mich. 321, 71 N. W. 628; In re Munger, 38 Misc. Rep. 268, 77 N. Y. Supp. 648; Allen v. Public Administrator, 1 Brad. Sur. 378; O'Neil v. Murray, 4 Brad. Sur. 311; In re Metcalf's Will, 16 Misc. Rep. 180, 38 N. Y. Supp. 1131; In re Green's Will, 20 N. Y. Supp. 538; Kaufman v. Caughman, 49 S. C. 159, 61 Am. St. Rep. 808, 27 S. E. 16; Barbour v. Moore, 4 App. D. C. 535.

On Applications for the Probate of Lost Wills.—If it be true, as we have already stated, that declarations of a testator are not admissible to prove the fact of his execution of his alleged will under ordinary circumstances, there is no reason why the rule should not remain applicable when such will is claimed to be lost and, notwithstanding such loss, its admission to probate is sought: Fuentes v. Gaines, 25 La. Ann. 85; Grant v. Grant, 1 Sand. Ch. 235; Tynan v. Paschal, 27

Tex. 286, 84 Am. Dec. 619. Where, however, the execution of the
will is proved, and the question is whether it continued in existence
unrevoked at the time of the testator's death, notwithstanding it
cannot be found, his declarations are admissible either to repel (Mat-
ter of Page, 118 Ill. 576, 59 Am. Rep. 395, 8 N. E. 852; McDonald v.
McDonald, 142 Ind. 45, 41 N. E. 336; Schnee v. Schnee, 61 Kan. 643,
60 Pac. 738; Hamilton v. Crow, 175 Mo. 634, 75 S. W. 389; Clark v.
Turner, 50 Neb. 296, 69 N. W. 843, 38 L. R. A. 433; Williams v.
Miles (Neb.), 94 N. W. 705, 96 N. W. 151; In re Cosgrove's Will, 31
Misc. Rep. 422, 65 N. Y. Supp. 570; Reeves v. Booth, 2 Mill, 334, 12
Am. Dec. 679; Tynan v. Paschal, 27 Tex. 286, 84 Am. Dec. 619; In
re Valentine's Will, 93 Wis. 45, 67 N. W. 12; Southworth v. Adams,
11 Biss. 256, Fed. Cas. No. 13,194), or to support (Weeks v. McBeth,
14 Ala. 474; Behrens v. Behrens, 47 Ohio St. 323; Baushett v. Keitt,
22 S. C. 187; Keen v. Keen, L. R. 3 P. 105, 42 L. J. P. 61, 29 L. T.
247), the presumption of its destruction and revocation. That the
declarations of a testator are admissible to prove that his lost will re-
mained in existence and in force at the time of his death is denied in
New York, the court saying: "The question is not entirely free from
difficulty, but whatever doubt exists concerning the correct rule arises,
not from the nature of the question itself, but from the views and
expressions to be found in some of the adjudged cases. The fact in
issue was whether the instruments in question were physically in
existence at the time of the death of the testatrix, and if not, whether
they had been fraudulently destroyed during her life. If the evidence
offered did not prove or tend to prove this issue, it was properly ex-
cluded. If the existence of a will may be established by proof of
the declarations of the deceased, then it is difficult to see why the
execution and contents of the instrument may not be established by
like proof, providing two or more witnesses testify to the declarations,
and thus testamentary dispositions of property would be established
wholly by oral evidence consisting entirely of the declarations of the
deceased. It is true that in the present case there is no dispute with
respect to the execution or contents of the will, but if the principle is
established that the existence of the will at the time of death may be
shown by oral proof of such declarations, it must follow that any other
fact required by the statute may be shown in like manner. The prin-
ciple involved in the question, therefore, is whether the oral state-
ments or declarations of a party before death are admissible to
establish a testamentary disposition of property. The contention of
the learned counsel for the proponents is that they prove, or tend to
prove, that the deceased had no intention to revoke her will, and hence
that it was in existence at the time of her death. However plausible
this proposition may seem, it asserts a rule of evidence which is open
to the objection that, through its complete operation, a will or codicil
may be established without the production of any writing whatever.
The rule could not in reason be limited to a case like this where there

is proof of the execution by the deceased of a written will, since the declarations of the deceased that a will had been executed are of as much probative force as declarations that it had not been revoked. We think the declarations of the deceased were not competent to prove that the will or codicil was in existence at the time of her death. The whole course of legislation in this state from the earliest times to the present day concerning the execution or revocation of wills discloses a clear purpose to substitute in all cases written for oral proof of the testamentary disposition of property and to sweep away all parol proof of testamentary intentions, and hence to exclude statements or declarations of the deceased": In re Kennedy's Will, 167 N. Y. 163, 60 N. E. 442. These views are approved in Estate of Colbert, 31 Mont. 461, 107 Am. St. Rep. 439, 78 Pac. 971. Whether the contents of an alleged lost will can be proved solely by the declarations of the testator is doubtful. That such declarations are admissible in connection with other evidence is quite well established: Muller v. Muller, 108 Ky. 511, 56 S. W. 802; Clark v. Turner, 50 Neb. 290, 64 N. W. 843, 38 L. R. A. 433; Williams v. Miles (Neb.), 94 N. W. 705, 96 N. W. 151; Woodward v. Goldstone, L. R. 11 App. Cas. 469, 35 W. R. 337, 56 L. J. Prob., N. S., 1; but these decisions indicate that the contents of the will cannot be established by those declarations alone.

**On the Question of Revocation.**—As a will cannot be revoked by words alone, the declarations of a testator that he has revoked his will, or intends to do so in the future, are clearly inadmissible in the absence of evidence of any revocatory act: Slaughter v. Stephens, 81 Ala. 418, 2 South. 145; Woodruff v. Hundley, 127 Ala. 640, 85 Am. St. Rep. 145, 29 South. 98; Kirkpatrick v. Jenkins, 96 Tenn. 85, 33 S. W. 819; Smith v. Fenner, 1 Gall. 170, Fed. Cas. No. 13,046. Hence, the declarations of a testator are not admissible to prove that he executed his will in duplicate and destroyed one part with the intention of revoking it: Manatt v. Scott, 106 Iowa, 203, 68 Am. St. Rep. 293, 76 N. W. 717. Probably an exception may be maintained where it satisfactorily appears that the testator did an act with the intent to effect a revocation, but by fraud or deceit practiced upon him the act in fact done was entirely different from the act intended, as where he, after placing his will in a drawer with a red ribbon tied around it, went to that drawer and took out what appeared to be his will, and burned it, some person having, however, removed the will without the testator's knowledge and substituted another paper for it having like exterior appearance. In such a case, it is said that the testator's declarations are admissible to prove the revocation of the will: Smiley v. Gambill, 2 Head, 164. The declarations of a testator to the effect that he has made no will (Toebbe v. Williams, 80 Ky. 661), or that he intends to die intestate (Lewis v. Lewis, 2 Watts & S. 455), are not admissible to establish the revocation of his will. His declarations, that he had canceled or destroyed his will for the purpose of revoking it, are inadmissible where, after his death, such will is found not to be

destroyed nor canceled: Meeker v. Boylan, 28 N. J. L. 274. If, on
the other hand, it is not found after his death, his declarations, as we
have already shown, are admissible to support the presumption that the
will was destroyed by him with revocatory intent: See preceding para-
graph; Betts v. Jackson, 6 Wend. 173; Behrens v. Behrens, 47 Ohio St.
323, 21 Am. St. Rep. 820, 25 N. E. 209; Youndt v. Youndt, 3 Grant's
Cas. 140; Gardner v: Gardner, 177 Pa. 218, 35 Atl. 558; Bauskett
v. Keitt, 22 S. C. 187. Nor can the revocation of one will by the
execution of another and later will be shown by the testator's dec-
larations. This is necessarily true, for, as the alleged later will
cannot be established so as to entitle it to admission to probate
by the mere declarations of the testator that he executed it, it can-
not, because of such declarations, operate to annul a pre-existing
will: Caemon v. Van Harke, 33 Kan. 333, 6 Pac. 620; Allen v. Jeter, 6
Lea, 672. A will may be found after the testator's death at a place
or in a condition tending to indicate that such place or condition is
due to an act done by him for the purpose of revoking it, and where
such is the case, his declarations are probably admissible when they
tend to prove that he intended to revoke, and understood that he had
revoked, his will: Patterson v. Hickey, 32 Ga. 156; Lawyer v. Smith,
8 Mich. 411, 77 Am. Dec. 460; Harring v. Allen, 25 Mich. 505; Throck-
morton v. Holt, 12 App. D. C. 552. Certainly, however, doubt remains
respecting the cases to which this rule is applicable. Thus, where
a will was forwarded by some unknown persons to the register of
wills, and when received by him, it appeared to have been mutilated,
torn, and burned at the edges, and it was conceded that if it had been
found in that condition among the papers or repositories of the de-
cedent, a presumption would have arisen in favor of its revocation,
it was held to have been error to admit in evidence declarations of
the decedent, not part of the res gestae, for the purpose of showing
that the will had been revoked by him. "This evidence," said the
supreme court of the United States, "is claimed to be admissible for
the purpose of authorizing the inference that the testator himself
mutilated or directed the mutilation of the will for the purpose of
thereby revoking it. The declarations made by a testator at the time
of mutilation or cancellation going to show the intent with which the
act is done are, of course, admissible, being part of the res gestae.
But as the production of the will under the circumstances proved in
this case created no presumption of revocation, it was necessary to
prove that the act of mutilation was performed by the testator or
by his direction and with an intention to revoke, and we think that
his declarations, though being a part of the res gestae, cannot be
admitted for the purpose of asking the jury to infer therefrom 'that
the testator not only performed or directed the act of mutilation, but
did so with an intent to revoke the instrument. This kind of evi-
dence is of the most dangerous character. It is hearsay and nothing

more": Throckmorton v. Holt, 180 U. S. 552, 21 Sup. Ct. 474, 45 L. Ed. 663.

Declarations of a testator are, however, we think, admissible to rebut a presumption of revocation which otherwise must be indulged. So far as this subject is involved in the case of lost wills, it has been considered in the second preceding paragraph. It has been held, but the doctrine is questionable, that a testator, after executing a second will, may declare that both it and the preceding will are to remain in force, and that such declaration may be received in evidence to rebut the intended revocation: Lyon v. Fiske, 1 La. Ann. 444. A will may be so mutilated that, in the absence of evidence to the contrary, it must be presumed to have been revoked by the testator. May his declarations be received to repel this presumption by engendering the inference that the act of spoliation was probably that of another person? In Tucker v. Whitehead, 59 Miss. 594, it was held that evidence had been properly received of the declarations of a decedent, extending over a period of eighteen months, commencing at the date of the will and continuing until four days before he died, relating to the fact of his having made a will and of its contents, and of his affection for his niece, and of his testamentary intentions and desires, and what he had done to make them effective, where the purpose of the evidence was to support the inference that the mutilation of the will had been an act of others than the testator. The court said: "Whatever may be the true rule where the act which the law accepts as itself evidence of a revocation is undoubtedly shown to have been done by the testator, we think it clear that testimony such as was offered here should always be received where, as in this case, it is uncertain whether the act was committed by the testator, or was the unauthorized or criminal act of a spoliator. The law makes the destruction or mutilation of a will by the testator sufficient evidence of a design to revoke it, and whether any declarations by him, other than those which accompany the act and thereby become a part of the res gestae, should be receivable in evidence, to contradict or explain the act, may well admit of doubt; but where the fact that he was the author of the destruction or mutilation is itself first presumed from the place where the paper is found, and upon this presumption there is built up the further presumption that it was done animo revocandi, it would seem that something more than presumptions should be let in. In such a case it is the part of wisdom to open the doors as wide as possible for the reception of every species of evidence at all calculated to advance the discovery of truth, since not to do so must in a great number of cases result in defeating the will of the deceased by accident or fraud. The evils which may spring from the introduction of parol proof in such a case are less than those which must be wrought by its exclusion."

To Show Revival of Will on Revocation of Another.—The general subject whether and when the revocation of one will operates to re-

vive another and earlier has been considered in note to Graham v. Burch, 28 Am. St. Rep. 355. Whether declarations of a testator are admissible to aid in determining the question is not well settled. In a very early case it was said that his declarations while destroying a later will that he did not thereby intend to revive an earlier were admissible to show that no revivor was to take place: Boudinot v. Bradford, 2 Dall. 266, 1 L. Ed. 375. This ruling may, perhaps, be sustained on the ground that the declarations constituted part of the res gestae. In Massachusetts, on the other hand, declarations are admissible to show that by the revocation of a later will he did intend to revive an earlier, though, in the absence of such declarations, no such intention would be imputed to him: Pickens v. Davis, 134 Mass. 252, 45 Am. Rep. 322; Williams v. Williams, 142 Mass. 515, 8 N. E. 424.

**To Show Intentional Omission of Child from a Will.**—Under the statutes of the different states permitting the child or the issue of a deceased child of a testator to inherit its share of his estate, unless its omission from his will appears to be intentional, a difference of opinion has arisen whether such intention must be manifest on the face of the will or may be proved by extrinsic evidence: Notes to Wilson v. Fosket, 39 Am. Dec. 740, and Chappell v. Missionary Soc., 50 Am. St. Rep. 284. In those states where extrinsic evidence is admissible it may include testimony of the declarations of the testator: Whittemore v. Russell, 80 Me. 297, 6 Am. St. Rep. 200, 14 Atl. 197; Wilson v. Fosket; 6 Met. 400, 39 Am. Dec. 736; Converse v. Wales, 4 Allen, 512; Coutam v. Doull, 133 U. S. 216. See Ross on Probate Law and Practice, 87.

**To Aid in Construction of a Will.**—It is scarcely necessary to observe that the meaning of a will, or, in other words, the testator's intent, must be sought solely in the writing itself, and that nothing said by him either before, after, or at the very time of its execution can add to or vary its terms or reconcile its conflicting provisions: In re Gilmore, 81 Cal. 240, 22 Pac. 665; Kirkland v. Conway, 116 Ill. 438; McCray v. Lipp, 35 Ind. 116; Denfield, Petitioner, 156 Mass. 365, 30 N. E. 1018; Magee v. McNeil, 41 Miss. 17, 90 Am. Dec. 354; Williams v. Vreeland, 32 N. J. Eq. 734; Comfort v. Mather, 2 Watts & S. 450, 37 Am. Dec. 523; Lewis v. Douglass, 14 R. I. 604; Read v. Payne, 3 Call, 225, 2 Am. Dec. 550; McClure v. Evans, 29 Beav. 422; Charter v. Charter, L. R. 7 H. L. 364, 43 L. J. P. 73. Nor is the rule rendered inapplicable by the fact that what he says is in writing by him subscribed, if not executed in a manner entitling it to admission to probate as a part of his will: Best v. Berry, 189 Mass. 510, 109 Am. St. Rep. 651, 75 N. E. 743. His declarations may, however, be received to aid in the construction of his will where they tend to remove or explain a latent ambiguity relating to the persons or property attempted to be named or described therein: Vandiver v. Vandiver. 115 Ala. 328, 22 South. 154; Brownfield v. Brownfield, 12 Pa. 136, 51 Am.

Dec. 590; Morgan v. Burrows, 45 Wis. 201, 30 Am. Rep. 717; Blake v. Marnell, 2 Barn. & C. 35, 12 R. R. 68.

"In case of an uncertainty arising upon the face of the will, the intention is to be ascertained from the words of the instrument, taking into view the circumstances under which it was made, exclusive of the oral declarations of the testator. This is the rule declared by statute in many states. So far as it excludes a consideration of the declarations of the testator, it probably is at variance with the correct rule, and will not be extended beyond the actual language of the statute. It applies to 'mere incidental fugitive utterances or declarations of intent,' as distinguished from those deliberately or advisedly made, such as specific instructions as to testamentary disposition given to the attorney employed to draft the will. Of course if the language of the will is clear and unambiguous, there in no room for interpretation; moreover, courts cannot force the construction of a sentence, or even a word, in order that a particular result may be reached or the will saved from condemnation. The circumstances under which the will is made are to be taken into view only when there is an uncertainty arising upon the face of the document, and then only for the purpose of ascertaining from the words of the will the intention of the testator. While surrounding circumstances may be considered for the purpose of ascertaining the objects of the testator's bounty, or the subject matter of a devise or bequest, they cannot be resorted to for the purpose of importing into the will any intention not therein expressed. In case a resort to the attending circumstances is proper, parol evidence in respect to them is admissible. But 'parol evidence— even declarations of the testator—is never admissible to modify, change, or vary his expressed intent. This must be deduced from the face of the will, or the bequest or devise fails. The apparent exceptions to this rule which allow parol evidence in the case of latent ambiguities, or to establish an implied trust, or to perfect imperfect descriptions of beneficiaries or the subject matter of a devise or bequest, are not true exceptions at all' ": 1 Ross on Probate Law and Practice, 70-72.