In the Matter of Proving the Alleged Will of GILBERT PALMATEER, Deceased.

*Probate of will — declaration of testator — undue influence, sufficient to prevent the probate of a will — Code of Civil Procedure, § 829 — evidence inadmissible thereunder.*

The declarations of a testator, made either before or after the execution of his will, are not competent evidence to impeach its validity on the ground of fraud, duress, imposition or other like cause, but such declarations are admissible where the will is attacked upon the ground of want of testamentary capacity, as evidence merely of the mental condition of the testator.

The fact that a testator resided with, or in close proximity to, the persons alleged to have unduly influenced him in the making and execution of his will, some of whom were the principal beneficiaries therein named, is not a circumstance sufficient in itself to justify the conclusion that his will was the result of undue influence, where the will was not drawn by any of the beneficiaries, and where the evidence failed to disclose the fact that any of such persons gave any instruction or direction to the draftsman of the same.

Undue influence or restraint, sufficient to justify the refusal to admit to probate an instrument propounded as the last will and testament of a decedent, must be a restraint operating upon the testator at the time of making the will, dominating his will and judgment and coercing and controlling his action.

A person interested in an estate cannot, under the provisions of section 829 of the Code of Civil Procedure, testify to a conversation had between the testator and another, in which the witness takes no part.

APPEAL by Maggie Palmateer and another, the executrices named in the alleged will of Gilbert Palmateer, deceased, from so much of an order and decree of the Surrogate's Court of the county of Ulster, entered in the Ulster County Surrogate's Court on the 31st day of December, 1892, as decrees that the probate of the paper offered as the last will and testament of the said deceased be denied, with costs to be paid out of the estate.

*S. G. Carpenter* and *A. T. Clearwater*, for the executrices and legatees, appellants.

*Eldorus Dayton* and *D. W. Ostrander*, for the contestants, respondents.

MAYHAM, P. J.:

This is an appeal by the proponents, as executrices and legatees named in an instrument purporting to be the last will and testament

of Gilbert Palmateer, deceased, from a decree of the surrogate of Ulster county refusing to admit such instrument to probate as the will of said deceased, and directing the payment of costs of said contestants out of the estate of the deceased, on the ground that Gilbert Palmateer was unduly influenced in making said will.

The surrogate found and decided that the alleged testator was, at the time of making the instrument propounded as his last will, of sound mind, rational and competent to make a will, so that the only question presented by this appeal is whether such instrument was made and procured by undue influence.

The will was dated June 15, 1889, and the deceased died January 25, 1892, at the age of about seventy-nine years.

The deceased had been twice married, his first wife dying about the year 1850, leaving four children, the fruit of such marriage, three of whom survived the testator and one of whom died before the testator, leaving two sons, both of whom survive him. By his second marriage he had three children, all of whom, with his second wife, survived him.

In his will the testator bequeathed to his wife $100, the use of two rooms in his house and of any furniture she might wish for the same for life in lieu of dower. To his two unmarried daughters he gave the furniture the use of which was given his wife for life. To two of his daughters by his first marriage and the three daughters by his second marriage he bequeathed $100 each. To his two grandsons, sons of the deceased daughter by his first marriage, he devised two farms, to be divided between them at the majority of the youngest, and also bequeathed $100 to each of said grandsons.

All of the residue of his estate, real and personal, he devised and bequeathed to his two unmarried daughters, children of his second wife. The testator in his lifetime conveyed by deed for nominal consideration, real estate valued at about $20,000 to his daughters, the larger share of which was conveyed to the children of his second marriage, but one of the farms valued at about $2,000 was conveyed to a daughter by his first marriage; at about the same time he assigned securities valued at about $12,000 to his second wife and her daughters.

One of the testator's daughters by his first wife, with her husband, had had bitter and protracted litigation with the testator, and to that

daughter the testator seems not to have made any advances by deed or assignment of securities, nor is she a beneficiary named in his will, and she appears as one of the contestants in the proceedings before the surrogate on the application to prove the same.

The surrogate in the examination of the question of undue influence allowed a wide range of investigation by the evidence showing the relations between the testator and his second wife, and her government and treatment of the children of the first wife, who by the second marriage were committed to her government and care, and that evidence disclosed in some instances treatment of severity, if not cruelty, exercised by this stepmother of these children by the former marriage, but these daughters were all married, and had left the paternal home many years before the making of this will, and while such evidence might bear in a very remote degree upon the question of undue influence, it fell far short of establishing any such control over the mind and will of the testator as to interfere with the testamentary disposition of his property, even if this evidence stood unchallenged or undisputed.

But the proponents introduced evidence tending to show that the conduct of this stepmother was kind, affectionate and humane towards these children.

There was also evidence offered on the part of the contestants tending to show that the second wife and her children attempted by arguments, persuasions and even threats to coerce and control the testator in the disposition of his property by his will, and as evidence bearing upon that subject the contestants introduced evidence of the declarations of the testator which it is claimed tended to show that he yielded to the dictation and control of his wife and daughters, or was so far influenced by their conduct in that regard that he did not follow his previously expressed wish or determination to make an equal distribution of his property between all of his children.

But it is insisted on the part of the appellants that as the testator at the time of making this will was of sound and disposing mind and competent to make a will, as found by the surrogate, and as none of these declarations were made at the time of making the will, and are not, therefore, a part of the *res gestæ*, they are incompetent and cannot be considered and treated as evidence to affect that

instrument. The declarations relied upon by the contestants cover a period of several years before the execution of the will, and standing alone are not enough, we think, to prove undue influence or fraud at the time of its execution.

In *Waterman* v. *Whitney* (11 N. Y. 157) Judge SELDEN, after a very exhaustive review of this subject, in which he examines the authorities in England, in other States of this Union and in this State, sums up the result of his research in this language : " These cases must, I think, be sufficient to establish the position, that declarations of a testator, made either *before or after* the execution of the will, are not competent evidence to impeach its validity on the ground of fraud, duress, imposition or other like cause."

The learned judge, in the further discussion of this question, conceded the admissibility of the declarations of a testator where the will is attacked upon the ground of want of testamentary capacity, and shows that their admissibility on such inquiry stands upon an entirely different principle from the one sought to be applied here, and he adds : " The difference is certainly very obvious between receiving the declarations of a testator to prove a distinct external fact, such as duress or fraud, for instance, and as evidence merely of the mental condition of the testator.

" In the former case it is mere hearsay and liable to all the objection to which the mere declarations of third persons are subject ; while in the latter it is the most direct and appropriate species of evidence."

Considered, therefore, as evidence upon the question of mental competency, this evidence was proper. But after hearing this evidence the learned surrogate held that the testator was of sound and disposing mind and memory and competent to make a will.

Within the light of these authorities we cannot consider the declarations of the testator, upon the question of fraud, duress, imposition or other like causes ; and with this evidence excluded from consideration the finding of the learned surrogate in his fourth and fifth findings of fraud, circumvention, deceit and evil practices, by which the natural affections of the testator for the contestants were alienated and the will was procured to be executed by Hannah Palmateer, Martha E. Palmateer, Maggie F. Palmateer, Mary T. Koons and Alphonso J. Koons, is not sustained.

Nor do we think the fact that the testator resided with or in close

proximity to the persons last named, some of who were the principal beneficiaries in his will, a circumstance sufficient in itself under the evidence in this case to justify the conclusion that the will was the result of undue influence.

The will was not drawn by any of the beneficiaries. Nor does the evidence disclose the fact that they or any one of them gave any instruction or direction to the draftsman of the same. On the contrary, the draftsman testified that no one talked with him about the will except the testator, who alone was with·him when the instructions were given and the will was drawn. This evidence is not contradicted or questioned. The testimony of the draftsman, who is a reputable lawyer, on the subject of the drawing and execution of this will, is as follows: " Q. State when you went to draw the will of Mr. Palmateer just what took place? A. I went in the sitting room and he told me about how he wanted the will and I got it up. He told me himself. We were alone in the room, and the other witness did not come in until it was completed. He told me what to write and what he wanted. I drew it in that manner, and when it was complete called in the other witness. No one else gave me any directions in addition to him. There was no one in the room at the time it was drawn, except perhaps members of the family who came in and went right out, but did not say anything to us. He signed his name opposite the seal at the end of the will. I asked him in the presence of this other witness·if he acknowledged this to be his signature — I always do this — if he declared this to be his last will and testament; and he said ' yes;' if he requested Mr. Edward L. Tompkins and myself to sign as witnesses, and he said ' yes.' After he signed his name we signed our names in the presence of him and in·the presence of each other as witnesses to the will. I saw him sign the will and I saw the other witness sign the will. I read the will over to him after I drew·it. He said it was all right after I read it over. I do not remember whether I drew more than one copy, but he knew the contents of it and he was satisfied. Before the witness came in he knew all the provisions. He was over twenty-one years of age. I have known him for about thirty-two or thirty-three years."

This evidence it seems to us falls far short of establishing undue influence. If we assume that the evidence in this case was such as

to shift the burden of proving the absence of undue influence upon the proponents, instead of requiring the contestants, who assert undue influence, to prove it, still the evidence of the circumstances of the preparation and execution of the will would establish such absence. But in this case we see nothing in the evidence calculated to shift the burden from the contestants to the proponents.

In *Matter of Will of Martin* (98 N. Y. 196) DANFORTH, J., after stating the circumstances attending the execution of the will of the testator, uses this language : " The case then is one where the testatrix had testamentary capacity, a present knowledge of the contents of the will, and where, at its execution, she was surrounded by all the guards which the statute has prescribed to prevent fraud and imposition. A will executed under these circumstances can be avoided only by influence amounting to force or coercion and proof that it was obtained by this coercion. The burden of proving it is on the party who makes the allegation. These principles are well settled." (Citing *Tyler* v. *Gardiner*, 35 N. Y. 559 ; *Cudney* v. *Cudney*, 68 id. 148.)

Such undue influence or restraint must be a present restraint operating upon the testator at the time of making the will, dominating the will and judgment of the testator and coercing and controlling his action. (*McMahon* v. *Ryan*, 20 Penn. St. 329 ; *Eckert* v. *Flowry*, 43 id. 46.)

In *The Matter of the Will of Snelling* (136 N. Y. 517) O'BRIEN, J., says : " So long as her mental powers enabled her to understand and appreciate the amount and condition of her property, and to comprehend the nature and consequences of her act in executing the will, she was at liberty to dispose of her own in such manner as seemed best to her, providing the disposition was her own free act. What the law terms undue influence is not established by proof tending to show that the testator acted from motives of affection or gratitude though the objects of her bounty were strangers to her blood. The influence or moral coercion, or by whatever other term designated, must be such as to overpower the will of the testator and subject it to the will and control of another, in which case it assumes a character of fraud." (*Horn* v. *Pullman*, 72 N. Y. 276 ; *Clapp* v. *Fullerton*, 34 id. 190 ; *Hollis* v. *Drew Theological Seminary*, 95 id. 166 ; *Marx* v. *McGlynn*, 88 id. 370.)

Starting, therefore, as we do with the fact established that the testator was, at the time of the execution of this will of sound and disposing mind and competent to make a testamentary disposition of his property, we think that the learned surrogate erred in finding and deciding that the will was the result of fraud or undue influence and in refusing to admit the same to probate.

We think that the surrogate erred also in the admission of evidence of a conversation between the testator and his wife in the presence of one of the daughters, who was interested in the event of this contest, to be given by the daughter under proponents' objection that it was not admissible, under section 829 of the Code of Civil Procedure. The daughter, who was interested in the event, was permitted to give statements made by her father to her mother bearing upon the questions involved in this controversy.

Such evidence has been held inadmissible. In *Matter of Will of Eysman* (113 N. Y. 62) it was held that a person interested in the estate could not testify to a conversation between the testator and another in which the witness took no part. It is true that the courts will not reverse for such errors unless the court can see that the party appealing was injured by its reception. (§ 2545, Code.) But if the evidence offered was illegal, it seems to have been upon the relations between the testator and his second wife, bearing upon the question of undue influence, and was, therefore, material, and its erroneous reception injurious to the appellant.

The decree of the surrogate must be reversed, with costs to the appellants of this appeal to be paid out of the estate, and as the determination involves questions of fact, and the appeal was taken from a decree made on a petition to prove a will, an order must be made directing a trial by jury of the material questions of fact arising upon the issue between the parties, under section 2588 of the Code of Civil Procedure.

PUTNAM, J., concurred; HERRICK, J., concurred in the result.

Decree of surrogate reversed, with costs and an order directing a new trial by jury.