COOKE et al. v. HIGGINS et al.

(Supreme Court, Appellate Division, Second Department. July 25, 1912.)

1. DEEDS (§ 196*)—CONVEYANCES—PRESUMPTIONS—FRAUD—HUSBAND AND WIFE.

No presumption of fraud or undue influence in relation to conveyances by a husband to his wife arises out of the marriage relation.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 587–593, 649; Dec. Dig. § 196.*]

2. DEEDS (§ 211*)—FRAUD—WEIGHT OF EVIDENCE.

While, in general, conveyances of real property can only be invalidated by evidence clear and convincing beyond reasonable controversy, that evidence which shall be "sufficiently clear and convincing" may vary with the circumstances.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647; Dec. Dig. § 211.*]

3. DEEDS (§ 211*)—UNDUE INFLUENCE—WEIGHT OF EVIDENCE.

Where a grantor at the time of a conveyance is physically weak, and his mental condition such that control is comparatively easy, either because of extreme dependence or through fear of resistance, while the grantee is physically and mentally strong, less evidence in the way of acts or conduct indicating the grantee's domination of the grantor will be sufficient to set aside the conveyance for fraud and undue influence than if no such disparity existed, but there must be some evidence that, either by importunities which could not be resisted or by deception, fraud, or other improper means, the instrument attacked does not express or is contrary to the real wish and intent of the party executing or directing the execution thereof.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647; Dec. Dig. § 211.*]

4. DEEDS (§ 211*)—ASSENT—UNDUE INFLUENCE.

Undue influence inducing the execution of a deed resulting in fraud may be proved by circumstantial as well as direct evidence; inclination to take advantage of another and opportunity to do so being important factors to be considered, but being insufficient in themselves, unless there is also evidence that would warrant the conclusion that the inclination had been followed, and the opportunity embraced.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647; Dec. Dig. § 211.*]

5. DEEDS (§ 196*)—CONVEYANCE TO WIFE—ASSENT—UNDUE INFLUENCE.

Undue influence on the part of a wife to obtain certain conveyances of real estate from her husband was not established by proof showing that the conveyances resulted from motives of affection and gratitude on the husband's part.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 587–593, 649; Dec. Dig. § 196.*]

6. DEEDS (§ 211*)—CONVEYANCE TO WIFE—DEED—UNDUE INFLUENCE—FRAUD.

Evidence *held* insufficient to warrant a finding of fraud or undue influence on the part of a wife inducing conveyance of real property to her by her husband.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647; Dec. Dig. § 211.*]

Carr and Woodward, JJ., dissenting.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Kings County.

Action by Mary H. Cooke and another against Gertrude S. Higgins and another. From a judgment in favor of plaintiffs, and from an order denying the motion of Gertrude S. Higgins to resettle the court's findings, she appeals. Reversed and remanded.

Argued before HIRSCHBERG, BURR, THOMAS, CARR, and WOODWARD, JJ.

Alfred G. Reeves, of New York City, for appellant.

John J. Kuhn, of Brooklyn, for respondents.

BURR, J. Thomas C. Higgins died intestate May 6, 1909. He left him surviving his widow, the defendant Gertrude S. Higgins, and a son, the defendant Edwin E. Higgins. The plaintiffs are his grandchildren, being the children of a deceased daughter. Defendant Gertrude S. Higgins was married to decedent in June, 1894. She was considerably younger than he. Each had been previously married. She resided with him in Brooklyn up to the time of his death. Defendant Edwin E. Higgins also resided in Brooklyn, is a physician, and attended decedent during his last illness. Plaintiffs reside in Binghamton, N. Y.

On or about November 11, 1905, Thomas C. Higgins, by two deeds, conveyed to his wife two pieces of real property in the borough of Brooklyn, one situated on the northeast corner of Lafayette street and Debevoise place, and the other situated on the southerly side of Ninety-Fourth street, 467 feet 10½ inches westerly from Fourth avenue. For convenience of description, we will refer to these as parcels 1 and 2, respectively. On or about October 24, 1905, George P. Hunton and others conveyed to defendant Gertrude S. Higgins 29 lots of land, shown on a map entitled, "Map of property belonging to Matilda Schoener." Eleven of these lots stood in her name at the time of his death. On or about the 14th day of January, 1907, Anna S. Amy conveyed to said defendant property on the south side of Carroll street, 41 feet and 1 inch easterly from Polhemus place. On or about September 17, 1908, the Abels-Gold Realty Company conveyed to said defendant property situated on the westerly side of Flatbush avenue, distant 111 feet and 7 inches southerly from Woodruff avenue, and on or about the 1st day of May, 1909, the Abels-Gold Realty Company conveyed to said defendant property situated on the westerly side of Flatbush avenue, distant about 75 feet from Beverly road, and also property on the northeasterly corner of Bedford avenue and Avenue D. Each of these parcels of ground was situated in the borough of Brooklyn. For convenience of description we will refer to them as parcels 3, 4, 5, and 6, respectively.

The learned court at Special Term has found that the execution of the deeds conveying parcels 1 and 2 was procured by fraud and undue influence on the part of defendant Gertrude S. Higgins, and the judgment entered upon its decision sets the said deeds aside. The court also found that the consideration for each of the deeds conveying parcels 3, 4, 5, and 6 proceeded directly or indirectly from Thomas C. Higgins, and that the property constituting such consid-

eration was obtained from him by fraud and undue influence on the part of said Gertrude S. Higgins. The judgment impresses a trust upon said lots in favor of his heirs at law. The court also found that at divers times between the 1st day of January, 1905, and the date of his death, Thomas C. Higgins transferred to the defendant certificates of stock in various corporations, and that in April, 1909, he also transferred to her $900 in cash, and that these transfers were the result of fraud and undue influence upon her part.

The judgment directed her to account for such personal property or the proceeds thereof. From said judgment, defendant Gertrude S. Higgins appeals.

The complaint alleges that at the time of the execution and delivery of the conveyances of parcels 1 and 2 Thomas C. Higgins was of unsound mind, and that the conveyances were wrongfully and illegally induced and procured by fraud, force, duress, and undue influence. It also alleges that Thomas C. Higgins was induced to advance the consideration for the conveyance of parcels 3, 4, 5, and 6, when he was of unsound mind, and by means of force, fraud, and undue influence practiced upon him. A similar allegation appears with regard to the transfer of the personal property. The judgment, however, is not based upon a finding that at the time the said conveyances and transfers were made Thomas C. Higgins was mentally incompetent, nor would the evidence justify such a finding. There was some testimony that at the time of his death, at the age of 85, he was physically infirm; that he was suffering from a distressing and at times painful disease of the bladder; that he was at times childish and forgetful, and at other times irritable and impatient; that he was a care, although not a burden, to his wife, who seems to have been devoted to him. Some of this testimony was disputed, but, if it had not been, it is far short of establishing inability upon his part to comprehend and act intelligently in connection with the various transactions herein reviewed. In fact, in the course of the trial, counsel for plaintiffs conceded that the evidence would not warrant a finding of mental incompetency. The judgment must stand or fall, therefore, upon the sufficiency of the evidence to establish fraud or undue influence. We are of opinion that plaintiffs failed to sustain the burden of proof.

[1] Out of the relation of husband and wife, unaffected by other things, no presumption arises of fraud or undue influence in relation to transactions between them. La Tourette v. La Tourette, 54 App. Div. 137, 66 N. Y. Supp. 430. Plaintiffs must, therefore, produce affirmative evidence to sustain the alleged cause of action.

[2] While it may be stated as a general rule that conveyances of real estate can only be invalidated by evidence clear and convincing beyond reasonable controversy (La Tourette v. La Tourette, supra), that which shall be "sufficiently clear and convincing" may vary with circumstances.

[3] When one of the parties to the transaction is physically weak, and his mental condition is such that control is comparatively easy, either because of extreme dependence or through fear of resistance,

while the other is physically and mentally strong, less evidence in the way of acts or conduct indicating domination of the weaker by the stronger will be sufficient than if no such disparity exists. But there must be some evidence that either by importunities which could not be resisted, or by deception, fraud, or other improper means, the instruments attacked do not express or are contrary to the real wish and intent of the party executing the same or directing the execution thereof. Absalon v. Sickinger, 102 App. Div. 383, 92 N. Y. Supp. 601.

[4] It is true that undue influence resulting in fraud may be proved by circumstantial as well as direct evidence. In such a case, inclination to take advantage of another and opportunity to do so are important factors to be considered. But inclination and opportunity are not sufficient unless there is also evidence that would warrant the conclusion that the inclination had been followed and the opportunity embraced. Cudney v. Cudney, 68 N. Y. 148. There is no direct evidence of any request, still less importunity, upon the part of the appellant, that either of these conveyances or transfers should be made to her. As we shall see when we come to consider the evidence, in several instances she apparently knew nothing of her husband's intentions until they had been consummated. Giving to the credible evidence in this case its fullest possible effect, nothing more is established than that during the closing years of his life decedent without request or solicitation upon the part of his wife, who tenderly and faithfully cared for him in his declining years and in his hour of need, turned over to her the greater portion of his property, leaving a comparatively small sum to be divided between his widow, his son, and his grandchildren under the intestate laws of the state. It also appears that he had previously contributed to some extent to the education of his grandchildren, and but a short time before his death had made a conveyance by way of gift to his son of another piece of real property.

[5] Undue influence is not established by evidence tending to show that the acts complained of resulted from motives of affection or gratitude. In re Snelling, 136 N. Y. 515, 32 N. E. 1006.

[6] Parcels 1 and 2 were conveyed to Gertrude S. Higgins by her husband in November, 1905. With regard to parcel 1, there seems to be no evidence on the part of either plaintiff or defendant as to how this deed came to be drawn. But there is evidence from the agent who had the care of the property that, after such conveyance and as late as the fall of 1907, he had frequent conversations with decedent, in the absence of his wife, about the property; that checks for the amount of the rent received were made out to the order of Gertrude S. Higgins and given to decedent, who took them to his wife; and that Thomas C. Higgins frequently stated to him that his wife was dissatisfied with the returns from the property. Here was a clear and intelligent recognition on his part of her title to the property and his acquiescence in her ownership thereof. Not only is there no evidence of any objection on his part thereto, but in conversation with this same witness he spoke of his marital relations, and told him that

he was very happily married. On these various occasions he conversed intelligently with the witness as to business matters and the values of property in various parts of the borough, and though at one time he notified the tenants not to pay any more rent to this agent, which direction was countermanded by his wife, he subsequently acquiesced in that direction, and received the checks for the net proceeds of such rent payable to her.

With regard to parcel 2, no evidence was introduced on the part of the plaintiffs showing the circumstances under which this conveyance was made, but a witness called by the defendant, a reputable member of the bar, testified that he was present when the deed conveying this parcel to her was executed; that it was made out in his wife's name by Mr. Higgins' direction, and, although Mrs. Higgins was then present, she "had nothing to do with the matter except to come there with her husband."

Parcel 3 consists of a portion of the land conveyed to Mrs. Higgins by Hunton and others in October, 1905. The undisputed evidence is that Thomas C. Higgins made a contract in his own name for the purchase of these lots in September of that year, and that he paid the purchase price with his own checks. But it also appears that Mrs. Higgins was not present when the contract was closed, and that she was named as grantee in the conveyance by her husband's directions. The fact that he paid the consideration would raise no trust in favor either of himself or his heirs at law, unless the grantee took the conveyance without his consent or knowledge or in violation of some trust. Real Property Law (Laws of 1896, c. 547, § 74). Clearly the conveyance was not without his knowledge, and there is not a particle of evidence that such conveyance was even a matter of discussion between him and his wife, still less that she overruled his will respecting the ownership thereof, or agreed to hold the same upon some trust which has been violated.

Parcels 5 and 6 were conveyed to Gertrude S. Higgins in exchange for a portion of the lots thus conveyed to her. Necessarily, if the former conveyance was a valid one, the latter must also be.

Parcel 4 was conveyed to Gertrude S. Higgins in January, 1907. It consisted of a lot of ground with a dwelling house erected thereon, where she and her husband resided up to the time of his death. The only evidence respecting this transaction is found in the testimony of Mr. Burdick, one of the officers of the Title Guarantee & Trust Company, to the effect that Thomas C. Higgins brought into the office of the company a contract for the sale of this property, in which his wife was named as the purchaser. He arranged for the examination of the title, and also negotiated for a loan by the company, to be secured by a mortgage on the property. His wife was not then present, and she does not in any way appear in the transaction until the contract was to be closed, when she attended at the office of the company to execute the bond and mortgage.

With regard to the transfer of the various certificates of stock, the uncontradicted evidence is that on the occasion when the stock of the Safety Car Heating & Lighting Company was transferred, in Sep-

tember; 1907, such transfer was made at the office of the company by Thomas C. Higgins, that he filled in the certificates of transfer himself and then signed them, and that on that occasion he stated to the secretary of the company, who witnessed the transfer, that he was going to give this stock to his wife who "had been very good to him," and he asked him whether he did not think it was a handsome present. There is uncontradicted evidence that on another occasion in 1906, on arriving at his home, he took from his pocket some envelopes containing certificates of stock, and threw them into his wife's lap, and said: "Those make you a rich woman." There is no evidence that, prior to the gift thereof by Thomas C. Higgins to Gertrude S. Higgins of the various stocks, the transfer had been the subject of conversation between them or was the result of importunity or even solicitation upon her part.

We have not deemed it necessary to refer to the testimony of several disinterested witnesses called by the defendant to the effect that a short time before his death he expressed his gratification that his wife was so well provided for. This is not a case of conflicting evidence. Plaintiffs' case is without any evidence to support it. It may be that they are disappointed because they will not receive a larger portion of their grandfather's estate. According to the testimony offered in their behalf for some time before his death they seem to have been extremely solicitous to ascertain how large an estate he had, and what their probable interest therein would be. They were allowed to prove declarations alleged to have been made both by him and Gertrude S. Higgins as to the value of his property and his intended disposition thereof, and to introduce in evidence copies of two wills executed by him, one in October, 1902, and the other in July, 1904, but both subsequently revoked. Many of these alleged declarations were denied by the defendant, but the testimony so offered and received was not entitled to any weight in proving fraud and undue influence. Marx v. McGlynn, 88 N. Y. 357; In re Palmateer, 78 Hun, 43, 28 N. Y. Supp. 1062; Gick v. Stumpf, 204 N. Y. 413, 97 N. E. 865. Thomas C. Higgins had the right to do what he would with his own. There is no evidence that the various conveyances and transfers attacked in this action were the result of anything save his own intelligent, voluntary acts.

The judgment should be reversed upon the facts as well as the law, and a new trial granted, costs to abide the final award of costs.

HIRSCHBERG and THOMAS, JJ., concur. CARR and WOODWARD, JJ., dissent.